[Cite as *State v. Fabian*, 2020-Ohio-3926.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


STATE OF OHIO,                              :

    Appellee,                          :               CASE NO. CA2019-10-119

                                       :               O P I N I O N
- vs -                                                              8/3/2020
                                       :

PATRICK E. FABIAN,                         :

    Appellant.                         :


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CR34684


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Anzelmo Law, James A. Anzelmo, 446 Howland Drive, Gahanna, Ohio 43230, for appellant


**M. POWELL, J.**

{¶ 1} Appellant, Patrick Fabian, appeals his conviction in the Warren County Court of Common Pleas following his guilty plea to drug trafficking.

{¶ 2} Fabian was indicted in November 2018 on several drug-related charges. On October 30, 2019, Fabian agreed to plead guilty to two counts of drug trafficking, both third-degree felonies, in exchange for the state dismissing five felony drug offenses and the imposition of a four-year prison sentence with no judicial release. During the plea hearing,

the trial court engaged Fabian into a Crim.R. 11 colloquy and advised him of the prison sentence and mandatory fine it would impose. Fabian confirmed with the trial court that he was entering his guilty plea voluntarily and without any pressure from anyone. He then proceeded to plead guilty to two counts of drug trafficking. It is undisputed that the trial court did not advise or even mention to Fabian that he would be subject to a discretionary period of up to three years of postrelease control before the court accepted his guilty plea. Rather, that information was contained in Fabian's guilty plea and jury waiver form.

{¶ 3} Upon accepting Fabian's guilty plea, the trial court proceeded immediately to sentencing. The trial court imposed the four-year agreed sentence and ordered Fabian to pay a mandatory fine of $5,000. Near the end of the sentencing hearing, the trial court realized it had failed to advise Fabian of postrelease control during the plea colloquy. Consequently, the trial court addressed Fabian and informed him that upon release from prison he may be subject to three years of postrelease control. The trial court further informed Fabian of the consequences of violating the terms of postrelease control. Fabian acknowledged that he understood.

{¶ 4} Fabian now appeals, raising two assignments of error.

{¶ 5} Assignment of Error No. 1:

{¶ 6} PATRICK FABIAN DID NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY PLEAD GUILTY, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION.

{¶ 7} Fabian argues that he did not knowingly, intelligently, or voluntarily enter his guilty plea because the trial court failed to comply with Crim.R. 11(C)(2)(a) when it did not advise him of postrelease control during the plea colloquy. In support of his argument,

Fabian cites *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509.

{¶ 8} When a defendant enters a guilty plea in a felony criminal case, the plea must be knowingly, intelligently, and voluntarily made. *State v. Smith*, 12th Dist. Warren Nos. CA2019-10-113 and CA2019-11-121, 2020-Ohio-3074, ¶ 7. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States and Ohio Constitutions. *Sarkozy* at ¶ 22. To ensure that a defendant's guilty plea is knowingly, intelligently, and voluntarily made, the trial court must engage the defendant in a plea colloquy pursuant to Crim.R. 11(C). Specifically, the court must notify the defendant of the constitutional rights set forth in Crim.R. 11(C)(2)(c) and make the determinations and give the warnings that Crim.R. 11(C)(2)(a) and (b) require. *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, ¶ 11.

{¶ 9} As pertinent here is Crim.R. 11(C)(2)(a), which provides:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest *without first addressing the defendant personally* and doing all of the following:
>
> Determining that the defendant is making the plea voluntarily, *with understanding* of the nature of the charges and *of the maximum penalty involved*, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(Emphasis added.)

{¶ 10} Postrelease control is a "period of supervision by the adult parole authority after a prisoner's release from imprisonment[.]" R.C. 2967.01(N). The Ohio Supreme Court has recognized that postrelease control, whether mandatory or discretionary, is part of a sentence for a felony offense. *State v. Fisher*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 23; *Woods v. Telb*, 89 Ohio St.3d 504, 511, 2000-Ohio-171. *See also State v. Jones*, 1st Dist. Hamilton Nos. C-130825 and C-130826, 2014-Ohio-4497, ¶ 12. Moreover, "[p]ursuant to

Crim.R. 11(C)(2)(a), because postrelease control is part of a defendant's potential maximum sentence, postrelease control is a penalty that the trial court must inform a defendant of before accepting the defendant's guilty plea." *State v. Floyd*, 12th Dist. Warren No. CA2016-09-077, 2017-Ohio-687, ¶ 16.

{¶ 11} As further explained by the General Assembly in R.C. 2943.032:

> Prior to accepting a guilty plea or a plea of no contest to an indictment, information, or complaint that charges a felony, the court shall inform the defendant personally that, if the defendant pleads guilty or no contest to the felony so charged or any other felony, if the court imposes a prison term upon the defendant for the felony, and if the offender violates the conditions of a postrelease control sanction imposed by the parole board upon the completion of the stated prison term, the parole board may impose upon the offender a residential sanction that includes a new prison term of up to nine months.

{¶ 12} Thus, "whether mandatory or discretionary, postrelease control is an additional penalty for the offense that the defendant must consider in determining whether to waive his constitutional rights and enter a guilty plea." *Jones*, 2014-Ohio-4497 at ¶ 14. "And R.C. 2943.032 makes no distinction between the two when it provides that the trial court 'shall inform the defendant personally' of potential postrelease-control sanctions prior to accepting a guilty plea * * * involving 'a felony.'" *Id.*

{¶ 13} Pursuant to Crim.R. 11(C)(2), a trial court's determination that a defendant entering a guilty plea understands the maximum penalty involved must precede the court's acceptance of the plea. This is accomplished by the trial court "addressing the defendant personally." Neither post-colloquy events nor a plea form signed by a defendant are relevant in reviewing whether a trial court has complied with Crim.R. 11(C)(2). The trial court advising Fabian of postrelease control only after he pled guilty does not comply with the requirement of Crim.R. 11(C)(2)(a) that a trial court "first" determine a defendant's understanding of the maximum penalty before accepting the plea. Neither does Fabian's

mere execution of the plea form satisfy the requirement of Crim.R. 11(C)(2)(a) that the trial court "personally address" a defendant to determine that the plea is entered with an understanding of the maximum penalty involved.

{¶ 14} The Ohio Supreme Court has recently once again addressed a trial court's compliance with Crim.R. 11(C) and how best to review a trial court's plea colloquy to ensure that a defendant's plea is knowing and voluntary. *State v. Dangler*, Slip Opinion No. 2020-Ohio-2765. The supreme court first explained that "[w]hen a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." *Id.* at ¶ 13.

{¶ 15} The court then reiterated the two limited exceptions to the prejudice component of the traditional rule. The first exception occurs "[w]hen a trial court fails to explain the constitutional rights [set forth in Crim.R. 11(C)(2)(c)] that a defendant waives by pleading guilty or no contest[.]" *Id.* at ¶ 14. When this occurs, "we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Id.* The second exception occurs as a result of "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C)[.]" (Emphasis sic.) *Id.* at ¶ 15. This, too, "eliminates the defendant's burden to show prejudice." *Id.*

{¶ 16} "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Dangler*, 2020-Ohio-2765 at ¶ 16. "The test for prejudice is whether the plea would have otherwise been made." *Id.*

{¶ 17} Recognizing that its previous caselaw has "muddled" the analysis that should apply when reviewing a defendant's guilty or no contest plea "by suggesting different tiers

of compliance with the rule" such as "partial" or "substantial" compliance, the supreme court then set forth the following "inquiry": "Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the trial court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.[1]

{¶ 18} The supreme court has never explicitly defined a trial court's "complete failure to comply" with Crim.R. 11. In *Sarkozy*, the supreme court found a complete failure to comply with the maximum penalty portion of Crim.R. 11(C)(2)(a) where a trial court "failed to mention postrelease control at all during the plea colloquy * * * before it accepted the guilty plea." *Sarkozy*, 2008-Ohio-509 at ¶ 22. By contrast in *Dangler*, the supreme court found there was not a complete failure to comply with the maximum penalty portion of Crim.R. 11(C)(2)(a) where the trial court advised the defendant of sex offender registration duties but failed to mention the residential restrictions and community notification aspects of sex offender classification: "Because the trial court * * * advised [the defendant] that he would be subject to the registration requirements of th[e] statutory scheme, the trial court did not completely fail to comply with Crim R. 11(C)(2)(a)'s maximum-penalty-advisement requirement." *Dangler*, 2020-Ohio-2765 at ¶ 22.

{¶ 19} It is plain that a complete failure to comply with Crim.R. 11(C) may involve something less than a failure to advise of all the notifications enumerated in Crim. R. 11(C)(2)(a). *Sarkozy* makes this clear as the supreme court found a complete failure to

---

1. Specifically, the supreme court stated, "Unfortunately, our caselaw has muddled that analysis by suggesting different tiers of compliance with the rule. The court has, in some instances, said that 'partial' compliance is sufficient absent a showing of prejudice from the failure to 'substantially' comply[.]" (Citations omitted.) *State v. Dangler*, Slip Opinion No. 2020-Ohio-2765, ¶ 17. "Elsewhere, the court has indicated that when a trial court has 'substantially' complied, the defendant must show prejudice from the failure to 'strictly' or 'literally' adhere to the rule. But those formulations have served only to unduly complicate what should be a fairly straightforward inquiry." (Citations omitted.) *Id.*

comply even though the trial court did advise about the prison terms involved. *Sarkozy* at ¶ 4. The *Sarkozy* holding of a complete failure to comply was founded upon the trial court's failure to provide any advice concerning a distinct component of the maximum penalty, i.e., postrelease control, during the plea colloquy. The supreme court hinted that *Sarkozy* might have been decided differently if the trial court had provided at least some advice concerning postrelease control during the plea colloquy: "The trial court did not merely misinform Sarkozy about the length of his term of postrelease control. Nor did the court merely misinform him as to whether postrelease control was mandatory or discretionary. Rather, the court failed to mention postrelease control at all during the plea colloquy." *Id.* By contrast, *Dangler* found there was not a complete failure to comply where a trial court provided incomplete advice concerning a distinct component of the maximum penalty (i.e., sex offender registration and notification requirements and duties).

{¶ 20} A criminal sentence consists of several distinct components, including a prison sentence, a fine, postrelease control, and where applicable, certain criminal statutory registration and notification requirements. The upshot of *Sarkozy* and *Dangler* is that a trial court's total failure to inform a defendant of a distinct component of the maximum penalty during a plea colloquy constitutes a complete failure to comply with Crim.R. 11(C)(2)(a), thereby requiring the vacation of the defendant's guilty or no contest plea. *See Sarkozy*, 2008-Ohio-509. Or stated differently, a complete failure to comply with Crim.R. 11(C)(2)(a) involves a trial court's complete omission in advising about a distinct component of the maximum penalty. By contrast, a trial court's mention of a component of the maximum penalty during a plea colloquy, albeit incomplete or perhaps inaccurate, does not constitute a complete failure to comply with Crim.R. 11(C)(2)(a). *See Dangler*, 2020-Ohio-2765.

{¶ 21} At issue is whether the trial court complied with Crim.R. 11(C)(2)(a) when it did not inform Fabian of postrelease control before accepting his guilty plea. Applying the

*Dangler* three-question inquiry, Fabian's guilty plea must be vacated.

{¶ 22} As stated above, postrelease control was an element of Fabian's sentence and a component of the maximum penalty pursuant to Crim.R. 11(C)(2)(a). Because the trial court did not inform Fabian of postrelease control before he entered his plea, the trial court did not comply with Crim.R. 11(C)(2)(a), thereby answering the first question in the negative.

{¶ 23} Because "[t]he maximum-penalty advisement is not a constitutional requirement," the second question asks us to determine whether the trial court's failure to advise Fabian of postrelease control under Crim.R. 11(C)(2)(a) constituted "a trial court's complete failure to comply with a portion of Crim.R. 11(C)" pursuant to the second exception to the prejudice requirement. *Dangler*, 2020-Ohio-2765 at ¶ 15, 23.

{¶ 24} As discussed above, pursuant to *Sarkozy/Dangler,* the failure of a trial court to provide any advice concerning a distinct component of the maximum penalty during a plea colloquy is a complete failure to comply with Crim.R. 11(C)(2)(a). As was the case in *Sarkozy*, while the trial court advised Fabian of the prison terms related to the offenses to which he was pleading guilty, it did not inform him about postrelease control before accepting his plea. The trial court did not simply misinform Fabian about postrelease control, such as whether it was mandatory or discretionary or its duration. Rather, the court made no mention of postrelease control during the plea colloquy. Consequently, the trial court's total failure to inform Fabian of postrelease control, which was a part of the maximum penalty, before it accepted the guilty plea, constituted "a trial court's complete failure to comply with a portion of Crim.R. 11(C)" pursuant to the second exception to the prejudice requirement. *Sarkozy*, 2008-Ohio-509 at ¶ 22.

{¶ 25} The state nevertheless argues that Fabian's guilty plea was voluntarily entered because Fabian's plea and sentencing were conducted in one hearing and the trial

court fully advised him of postrelease control during that hearing. In other words, the state argues that when a trial court holds a joint or combined plea and sentencing hearing, as opposed to conducting the plea and sentencing hearings on separate dates, a defendant's guilty plea is voluntarily entered as long as the trial court advises the defendant of postrelease control at some point during the hearing, including after the trial court accepts the guilty plea.

{¶ 26} However, *Sarkozy* unequivocally held that Crim.R. 11 requires a trial court to inform a defendant of the maximum penalty, including postrelease control, *during the plea colloquy prior to the defendant entering a guilty plea*. *Sarkozy*, 2008-Ohio-509 at paragraph two of the syllabus and ¶ 22-23, 25. *See also* R.C. 2943.032. Thus, the fact that the trial court eventually advised Fabian of postrelease control during the sentencing phase of the hearing does not cure the trial court's complete failure to comply with Crim.R. 11(C)(2)(a) during the plea colloquy. Rather, upon realizing its mistake or oversight in failing to advise Fabian of postrelease control during the plea colloquy and because a final judgment had not yet been issued pursuant to Crim.R. 32, the trial court should have revisited the plea to insure it was being entered with an understanding of the maximum penalty involved in compliance with Crim.R. 11(C)(2)(a).

{¶ 27} This case is similar to our opinion in *Floyd* and to the First Appellate District's opinion in *Jones*. *Floyd*, 2017-Ohio-687; *Jones*, 2014-Ohio-4497. In both cases, the defendants pled guilty to charges that subjected them to a discretionary period of up to three years of postrelease control if sentenced to prison. However, at the plea colloquy, the respective trial courts failed to explain or even mention postrelease control to the defendants. Citing *Sarkozy*, the First Appellate District vacated the defendant's guilty plea, finding that the trial court completely failed to comply with Crim.R. 11(C)(2)(a) when it failed to inform the defendant of postrelease control *during the plea colloquy*. *Jones* at ¶ 18, 22.

In so ruling, the court of appeals rejected the state's arguments that *Sarkozy* only applies to cases involving mandatory postrelease control, and that "there was some compliance" because the plea form signed by the defendant mentioned postrelease control. *Id.* at ¶ 15, 18.

{¶ 28} Likewise, this court found that the defendant's guilty plea was not voluntarily entered because "in accordance with *Sarkozy* and its progeny, as well as with the provisions found in R.C. 2943.032, * * * the trial court completely failed to comply with the nonconstitutional requirements found in Crim.R. 11(C)(2)(a) requiring it to notify the defendant of the maximum penalty that could be imposed prior to the defendant entering a guilty plea during its plea colloquy." *Floyd* at ¶ 18. This court further held, "'a court may not rely on defense counsel or a written document to supplant its duty to delineate the repercussions of pleading guilty[.]'  That is particularly true here when considering the requirements of R.C. 2943.032 and the Ohio Supreme Court's decision in *Sarkozy*." *Id.* at ¶ 24, quoting *State v. Brandenburg*, 12th Dist. Butler No. CA2007-07-155, 2008-Ohio-3593, ¶ 41.

{¶ 29} Having answered the second question of *Dangler* in the affirmative, no showing of prejudice is required, and we therefore do not reach the third question. Considering the favorable plea deal Fabian negotiated, the record does not suggest that he was prejudiced by the trial court's failure to advise him of postrelease control during the plea colloquy, in the sense that he would not otherwise have entered the plea. Nevertheless, the three-question inquiry adopted by the Ohio Supreme Court in *Dangler* does not allow a reviewing court to address whether a defendant was prejudiced when a trial court either fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) or completely fails to comply with a portion of Crim.R. 11(C). *Dangler*, 2020-Ohio-2765 at ¶ 14-17. We are bound by and constrained to follow the decisions of the Ohio Supreme

Court. *State v. Sheets*, 12th Dist. Clermont No. CA2006-04-032, 2007-Ohio-1799, ¶ 16.

{¶ 30} The record further suggests that Fabian was aware he was subject to postrelease control based upon the plea form he signed which plainly indicated that he was subject to a discretionary period of postrelease control of up to three years. However, while "[a] written acknowledgment of a guilty plea and a waiver of trial rights executed by an accused can, in some circumstances, reconcile ambiguities in the oral colloquy that Crim.R. 11(C) prescribes, * * * the writing does not substitute for an oral exchange when it is wholly omitted." *State v. Dixon*, 2d Dist. Clark No. 01CA17, 2001 Ohio App. LEXIS 5930, *7 (Dec. 28, 2001). "Crim.R. 11(C) requires that form of exchange to insure that the defendant makes a voluntary and intelligent decision whether to plead guilty." *Id.* "This court examines compliance with Crim.R. 11 by examining the trial court's communication to the defendant, not the defendant's subjective understanding of his rights." *State v. Gipson*, 1st Dist. Hamilton No. C-970891, 1998 Ohio App. LEXIS 4687, *9-10 (Sept. 30, 1998).

{¶ 31} In light of all of the foregoing, we find that the trial court completely failed to comply with Crim.R. 11(C)(2)(a) and Fabian's guilty plea was not knowingly, intelligently, and voluntarily made. Fabian's assignment of error is well-taken and sustained.

{¶ 32} Assignment of Error No. 2:

{¶ 33} PATRICK FABIAN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 34} Fabian argues that he received ineffective assistance of counsel because trial counsel did not move for a waiver of the mandatory fine at the sentencing hearing. However, based upon our resolution of Fabian's first assignment of error, his second assignment of error is moot. *State v. Martin*, 12th Dist. Warren No. CA2018-09-105, 2019-Ohio-2792.

{¶ 35} Fabian's conviction and sentence for drug trafficking is hereby reversed and his plea to those offenses is vacated. This matter is reversed and remanded to the trial court for further proceedings consistent with law and in accordance with this opinion.

HENDRICKSON, P.J., concurs.

PIPER, J, dissents.

**PIPER, J. dissenting.**

{¶ 36} While appreciating the majority's application of *Dangler*, I respectfully disagree with its application and as well dispute the majority's analysis of the facts before us. I must, therefore, dissent from the foregoing opinion.

{¶ 37} Fabian's plea was demonstratively made knowingly, voluntarily, and intelligently. The events at the plea and sentencing hearing, which had an agreed sentence, clearly document Fabian was informed by the trial court of postrelease control.[2] Thus, the trial court did not make a complete failure to comply with Crim.R. 11(C) and Fabian has failed to demonstrate any prejudice.

{¶ 38} Near the end of the plea and sentencing hearing, the trial court addressed Fabian and informed him that postrelease control was not mandatory but could be imposed for three years. The trial court also informed Fabian of the repercussions of violating the terms of postrelease control and asked Fabian if he understood the postrelease control issue. Fabian responded, "Yes, Your Honor." The court then asked if there were any other issues and both parties responded, "No."

{¶ 39} While the trial court had already accepted Fabian's plea at this point, the

---

2. Because it was an agreed plea and sentencing between the state, Fabian, and his counsel, there was only one hearing.

subsequent discussion nonetheless took place. Fabian was informed that he could possibly be ordered to serve postrelease control upon his release from prison. Granted, Fabian had already agreed to, and received, the sentence of four years he requested but, beyond the trial court's discussion on the subject, Fabian's plea form clearly included notification of postrelease control. The trial court's discussion of postrelease control does not constitute a complete failure on the trial court's part regarding its obligation to ensure Fabian was informed of his maximum sentence. Fabian was aware of his maximum sentence and received the exact sentence he and his attorney negotiated with the state, which the trial court instantaneously accepted.

{¶ 40} When an appellant challenges his plea as not knowingly, intelligently, and voluntarily entered, the Ohio Supreme Court has noted that an executed plea form could be a factor considered when reviewing the trial court's compliance with Crim.R. 11(C) where non-constitutional aspects of the colloquy are involved. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200 ¶ 15-17. *Veney* was not overruled by *Dangler* and there is no reason not to consider Fabian's plea form, the agreed maximum sentence, and subsequent discussion with the court in considering Fabian's voluntariness in entering his plea. Despite the majority's determination that the plea form was irrelevant, *Veney* is still good law that a plea form is relevant in the trial court's determination regarding the voluntariness of an appellant's plea.

{¶ 41} The majority ruling today suggests that if an attorney reminds a judge he or she forgot to address something prior to accepting a plea, the judge has no freedom to revisit discussions with the defendant in order to insure the defendant's voluntariness and understanding. Such precedent is not pragmatic and runs contrary to the spirit of Crim.R. 11(C). Such a precedent also strays from a meaningful application of *Veney* and *Dangler*. The timing of the discussion does not render its significance a nullity and the discussion

should not be relegated as a vain act to be ignored upon appellate review. Trial courts must be given broad leeway to correct any missteps.

{¶ 42} While the majority and I both rely on *Dangler*, I find *Dangler* simplified the analysis necessary for an appellate court when reviewing a trial court's acceptance of a defendant's guilty plea. The *Dangler* court was patently clear that a defendant is not entitled to have his or her plea vacated unless he or she demonstrates prejudice by a failure of the trial court's compliance with Crim.R. 11(C). The test for prejudice is that if not for the error or omission, the plea would not have otherwise been entered by the defendant. *Dangler*.

{¶ 43} The only exceptions noted within *Dangler* include a trial court's *complete failure* to comply with a portion of Crim.R. 11(C), or a trial court's failure to explain the constitutional rights that a defendant waives by pleading guilty or no contest. *Id.* at ¶ 14-15. Any exception to the prejudice component in a criminal-plea context is limited. *Id.*

{¶ 44} *Dangler* directed appellate courts to consider only three specific questions: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

{¶ 45} The majority determines that the trial court's discussion of postrelease control after accepting Fabian's plea was a complete failure because it was out of the customary sequence. I disagree, and would find that the trial court's error was not the type that excuses Fabian from his burden to demonstrate prejudice.

{¶ 46} I also find Fabian's reliance on *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, unpersuasive. In *Sarkozy*, the Ohio Supreme Court determined that the trial court fully failed to inform the defendant that he was subject to mandatory postrelease control and that such failure rendered the plea involuntarily given without consideration of

- 14 -

prejudice.

{¶ 47} Here, however, the trial court did not fail to inform Fabian of postrelease control and did so upon being reminded by the attorneys that such a discussion had not been had. The state and defense counsel had the plea and agreed sentence form as representing that postrelease control was mandatory. Upon realizing their mistake, they jointly requested the court to revisit the plea information and cross off the word "mandatory." This correction was entirely to Fabian's benefit.

{¶ 48} After making the correction, the trial court asked Fabian directly if he understood what the court had explained regarding postrelease control and Fabian responded that he did. At no time did Fabian express any form of confusion about postrelease control or otherwise indicate a lack of understanding. Fabian's counsel raised no objection to the sequence of the trial court's discussion of postrelease control; the discussion was actually invited by both the state and Fabian's counsel for purposes of correcting the record.

{¶ 49} *Dangler* does not instruct appellate courts to abandon legal tenets that have historically been used when reviewing the context of real-world daily events. Trial court determinations are rarely considered in a vacuum, and instead, in a multitude of situations, are considered in relation to the totality of the circumstances.[3] *State v. Hagan*, 12th Dist. Butler No. CA2018-07-136, 2019-Ohio-1047 (where the totality of the circumstances indicated the appellant's guilty plea was knowing, intelligent, and voluntary). More recently, where the challenge was to the Crim.R. 11(C) procedure, appellate review examined the totality of the circumstances and referenced that the appellant subjectively understood the

---

3. Again, despite the implication from the majority's interpretation of *Dangler, Dangler* did not remove from our jurisprudence the ability to consider the entirety of the plea hearing as to whether a plea was made voluntarily. *Veney.*

implications of his guilty plea. *State v. Williams*, 8th Dist. Cuyahoga No. 108333, 2020-Ohio-3588.

{¶ 50} The majority's decision today gives more significance to the *sequence* of events rather than the *substance* of what the discussions were with Fabian. The entirety of the record clearly reveals Fabian subjectively understood the implication of his plea in the sentence he and the state had agreed to.

{¶ 51} Crim.R. 11(C) requires a trial court address the defendant personally and determine that the defendant is making the plea voluntarily, with understanding of the maximum penalty involved. The trial court *did* personally address Fabian and *did not* withdraw its determination after the subsequent conversation occurred regarding postrelease control. The trial court was obviously satisfied by the discussion it had with Fabian regarding the impact postrelease control may have on his sentence. While the trial court could have brought up postrelease control earlier in the proceedings, there is nothing in the record to support a conclusion the Fabian would not have entered his plea had the trial court done so.

{¶ 52} I would thus answer the Ohio Supreme Court's three questions given us in *Dangler* at ¶17 as such: (1) The trial court did not fully comply with Crim.R. 11 because it failed to advise Fabian of the possibility of postrelease control *before* Fabian entered his plea;  (2) Upon revisiting the plea information, the trial court's failure is not of the type that excuses the burden of demonstrating prejudice;  (3) Fabian has not met his burden to show he was prejudiced by the trial court's failure. Therefore, I would find that Fabian's plea was not involuntarily and would overrule his first assignment of error.

{¶ 53} I would also overrule Fabian's second assignment of error in which he argues that his trial counsel was ineffective for failing to move for waiver of a mandatory fine. To prevail on an ineffective assistance of counsel claim, an appellant must establish that (1)

his trial counsel's performance was deficient and (2) he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984).

{¶ 54} According to R.C. 2929.18(B)(1), the trial court is obligated to impose mandatory fines when the defendant commits certain drug-related felonies unless the court determines the offender is an indigent person and is unable to pay the mandatory fine. The failure to file an affidavit alleging a defendant's indigency and inability to pay a mandatory fine only constitutes ineffective assistance of counsel when the record shows a reasonable probability that the trial court would have found the defendant indigent and unable to pay the fine had the affidavit been filed. *State v. Johnson*, 12th Dist. Butler No. CA2011-11-212, 2014-Ohio-3776. According to R.C. 2929.19(B)(5), "before imposing a financial sanction under section 2929.18 of the Revised Code * * * the court shall consider the offender's present and future ability to pay the amount of the sanction or fine."

{¶ 55} I would find that Fabian is unable to demonstrate ineffective assistance of counsel because he cannot show that a motion to waive the mandatory fine would have been granted. The record indicates that the trial court specifically considered Fabian's ability to pay and made a finding that Fabian had, or will have in the future, the means to pay the fine, and the record supports that finding.

{¶ 56} Fabian was able to pay a bail bondsman to post his $250,000 cash bond, and Fabian owned his own company. Fabian described himself as physically fit and noted that he was building a house for his family. Thus, Fabian had skills necessary to earn a living once released from prison and demonstrated no reason why he would unable to pay in the future. Thus, Fabian has not demonstrated his counsel was ineffective, and I would overrule his second assignment of error.

{¶ 57} I would affirm the trial court's ruling in all respects. Therefore, I dissent and cannot join in the majority's decision to sustain Fabian's first assignment of error.