[Cite as *State v. Anderson*, 2020-Ohio-6891.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  8-20-05

    v.

MATTHEW N. ANDERSON,           O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Logan County Common Pleas Court
Trial Court No. CR 19 06 0207

**Judgment Affirmed**

**Date of Decision:   December 28, 2020**

---

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Sarah J. Warren* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Matthew N. Anderson ("Anderson") appeals the judgment of the Logan County Court of Common Pleas. He alleges that his due process rights were violated as he did not knowingly, intelligently, or voluntarily enter a guilty plea. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On September 10, 2019, Anderson was indicted on three counts of attempted felonious assault in violation of R.C. 2903.11(A)(1); one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B); one count of possession of a fentanyl related compound in violation of R.C. 2925.11(A); one count of possession of cocaine in violation of R.C. 2925.11(A); one count of domestic violence in violation of R.C. 2912.25(A); and two counts of assault in violation of R.C. 2903.13(A). Doc. 13.

{¶3} On February 7, 2020, Anderson appeared before the trial court for a change of plea hearing. Doc. 112. After the Crim.R. 11 plea colloquy, Anderson pled guilty to one count of attempted felonious assault in violation of R.C. 2903.11(A)(1); one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B); and one count of possession of cocaine in violation of R.C. 2925.11(A). Tr. 21. Doc. 112. The remaining charges in the original indictment were dismissed. Doc. 112.

{¶4} After accepting Anderson's guilty plea, the trial court proceeded to sentencing. Doc. 112. For the offense of attempted felonious assault, the trial court imposed an indefinite sentence with a minimum prison term of three years and a maximum prison term of four-and-one-half years. Doc. 112. The trial court then ordered Anderson to serve a definite prison term of three years for the offense of failure to comply with an order or signal of a police officer and a definite prison term of one year for the offense of possession of drugs. Doc. 112. The trial court imposed these prison terms consecutively. Doc. 112.

*Assignment of Error*

{¶5} The appellant filed his notice of appeal on February 26, 2020. Doc. 130. On appeal, Anderson raises the following assignment of error:

**Appellant's due process rights were violated by a guilty plea that was not entered knowingly, intelligently, or voluntarily.**

He argues that the trial court did not properly determine that he understood the maximum penalty for the offense of attempted felonious assault. In particular, he argues that the trial court did not sufficiently explain indefinite sentencing to him before he entered his guilty plea. On the basis of these arguments, he asserts that his guilty plea was not knowingly, intelligently, or voluntarily entered.

*Legal Standard*

{¶6} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525,

527, 660 N.E.2d 450, 451 (1996). "Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *Id.* "To ensure that a defendant's guilty plea is knowingly, intelligently, and voluntarily made, the trial court must engage the defendant in a plea colloquy pursuant to Crim.R. 11(C)." *State v. Fabian*, 12th Dist. Warren No. CA2019-10-119, 2020-Ohio-3926, ¶ 8.

{¶7} "Crim.R. 11(C)(2) outlines the procedures trial courts must follow for accepting guilty pleas." *State v. Mullins,* 3d Dist. Wyandot No. 16-04-05, 2004-Ohio-4293, ¶ 7. Crim.R. 11(C)(2) reads as follows:

> **(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:**
>
> **(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.**
>
> **(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.**
>
> **(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.**

Crim.R. 11(C)(2). "The court must make the determinations and give the warnings that Crim.R. 11(C)(2)(a) and (b) require and must notify the defendant of the constitutional rights that Crim.R. 11(C)(2)(c) identifies." *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 11.

{¶8} "While the court must strictly comply with the requirements listed in Crim.R. 11(C)(2)(c), the court need only substantially comply with the requirements listed in Crim.R. 11(C)(2)(a) and (b)." *Bishop* at ¶ 11.

> **When a trial judge fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c), the guilty or no-contest plea is invalid 'under a presumption that it was entered involuntarily and unknowingly.' [*State v.*] *Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12; *see also* [*State v.*] *Nero*, 56 Ohio St.3d[ 106,] 107, 564 N.E.2d 474, citing *Boykin* [*v. Alabama*], 395 U.S. [238,] 242-243, 89 S.Ct. 1709, 23 L.Ed.2d 274. However, if the trial judge imperfectly explained nonconstitutional rights such as the right to be informed of the maximum possible penalty and the effect of the plea, a substantial-compliance rule applies. *Id.* Under this standard, a slight deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that 'the defendant subjectively understands the implications of his plea and the rights he is waiving,' the plea may be upheld. *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474.**

> **When the trial judge does not substantially comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court partially complied or failed to comply with the rule. If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect. *See Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474, citing *State v. Stewart* (1977), 51 Ohio St.2d 86, 93, 5 O.O.3d 52, 364 N.E.2d 1163, and Crim.R. 52(A); *see also* [*State v.*] *Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 23. The test**

> **for prejudice is 'whether the plea would have otherwise been made.'** *Nero* **at 108, 564 N.E.2d 474, citing** *Stewart,* ***[I]d*.** **If the trial judge completely failed to comply with the rule, e.g., by not informing the defendant of a mandatory period of postrelease control, the plea must be vacated.** *See Sarkozy,* **117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d, 1224, paragraph two of the syllabus. 'A complete failure to comply with the rule does not implicate an analysis of prejudice.'** *Id*. **at ¶ 22.**

*State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31-32. "[A] defendant challenging a guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made bears the burden of demonstrating a prejudicial effect." *Mullins*, *supra* at ¶ 5.

*Legal Analysis*

{¶9} In this case, Anderson argues that his guilty plea was not knowingly, intelligently, and voluntarily entered because he believed, at the change of plea hearing, that he was going to receive a definite prison term of seven years. He states that he had this belief because he was under the impression that the joint sentencing recommendation suggested a definite prison term of seven years. Anderson further argues that the trial court's explanation of indefinite sentencing during the Crim.R. 11 colloquy was insufficient to bring him to an understanding of the maximum penalty that he faced by pleading guilty.

{¶10} We begin our analysis by noting that a trial court is not bound by a joint sentencing recommendation. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 28 (holding that trial courts "are not bound by a jointly

recommended sentence."). During the Crim.R. 11 colloquy, the trial court clearly informed Anderson that it was not bound by the terms of the joint sentencing recommendation. Tr. 10. In response, Anderson affirmed that he understood that the trial court was not required to impose the recommended sentence. Tr. 10.

{¶11} Further, while the change of plea petition stated that a seven-year prison term was recommended, this document nowhere stated that this was to be a *definite* sentence. Doc. 112. In fact, the change of plea petition clearly stated that the charge of attempted felonious assault was an offense that was subject to an indefinite sentence and provided a detailed explanation of indefinite sentencing. Doc. 112. In his brief, Anderson also does not identify evidence in the record that indicates that he was offered a definite prison term of seven years.

{¶12} Anderson next argues that the trial court's Crim.R. 11 colloquy was not sufficient to bring him to an understanding of indefinite sentencing such that his guilty plea was knowing, intelligent, and voluntary. By arguing that the trial court did not properly determine that he understood indefinite sentencing, Anderson is asserting that the trial court did not comply with Crim.R. 11(C)(2)(a), which requires the trial court to determine that a defendant understand "the nature of the charges and of the maximum penalty involved * * *." Crim.R. 11(C)(2)(a). Since this argument implicates a nonconstitutional right, we will review the change of plea hearing to determine whether the trial court substantially complied with Crim.R. 11(C)(2)(a). *Clark, supra*, at ¶ 31.

{¶13} Turning to the Crim.R. 11 colloquy, the trial court, at the outset, informed Anderson of the maximum penalty that he could receive for the offense of attempted felonious assault. Tr. 12. The trial court stated the following:

> **[Trial Court]: Now, with regard to the possible penalties, the Court is obligated to inform you that for a felony in the F2—second-degree felony, the prison term that the Court could sentence you to is from two to eight years in prison and a fine of up to $20,000? * * ***
>
> **[Anderson]: Yes, sir.**

Tr. 12. After briefly reciting the maximum penalties for each of the charges against Anderson, the trial court returned to the charge of attempted felonious assault to explain that this offense was subject to an indefinite sentence and the implications of indefinite sentencing. Tr. 14-17. The following is the portion of the colloquy in which the trial court explained indefinite sentencing to Anderson:

> **[Trial Court]: On the felony of the second degree, there is a law in Ohio that applies to that sentence. It's called the Reagan Tokes Law. And what it has that comes along with the Reagan Tokes Law [is] what is called an indefinite sentence. This means that you will receive both a minimum term and a maximum term on that sentence. At sentencing, the Court will select a minimum prison term from the range of penalties that you receive. The minimum term for an F2, for instance, if you got seven years would be seven years. That would be your minimum term. Do you understand that, sir?**
>
> **[Anderson]: Yes.**
>
> **[Trial Court]: And after that, the Court picks a minimum sentence. The maximum term will automatically be an additional 50 percent of that minimum term. So the maximum term that you**

would be in jail for—if seven years is a minimum would be ten and a half years. Do you understand that, sir?

[Anderson]: Yes, sir.

* * *

[Trial Court]: All right. Do you understand that the longest minimum sentence that you could be ordered to serve would be eight years for a felony of the second degree?

[Anderson]: Yes, sir.

[Trial Court]: And the longest maximum sentence that you could be ordered to serve would be 12 years?

[Anderson]: Yes, sir.

[Trial Court]: Eight years plus half of eight, which is four or a total of 12 years. Do you understand that, sir?

[Anderson]: Yes, sir.

[Trial Court]: Do you understand that the law presumes that you will be released from prison once you have served the minimum term. So if the minimum term is seven years, there is a presumption that you would be released after those seven years. Do you understand that?

[Anderson]: Yes, sir.

[Trial Court]: Do you understand that the presumption can be overcome by the Ohio Department of Rehabilitation and Correction, meaning that you can be kept in prison longer than the minimum term?

[Anderson]: Yes, sir.

[Trial Court]: Do you understand that the Department of Rehabilitation and Correction could schedule a hearing during your prison term and that the department would consider at that

hearing your conduct while in prison, your rehabilitation, your threats to society, any housing restrictions imposed on you during your prison term, and your security classification in prison. Do you understand that?

[Anderson]: Yes, sir.

[Trial Court]: Do you understand that the Department of Rehabilitation and Corrections could make specific findings and could keep you in prison beyond the minimum term for an additional period of time that the department felt was reasonable?

[Anderson]: Yes, sir.

[Trial Court]: And do you understand that the Department of Rehabilitation and Correction could keep you in prison beyond the minimum term more than once provided the department conducts the kind of hearing that the law requires?

[Anderson]: Yes, sir.

[Trial Court]: Do you understand if you're kept in prison by the Department of Rehabilitation and Correction for the full amount of your minimum prison term on the F2, then you must be released from prison once you have served that maximum term?

[Anderson]: Yes, sir.

* * *

[Trial Court]: Do you understand that regardless of whether you receive good time credit, you will be released when you finish your minimum term unless the ODRC determines that you must remain in prison for bad conduct?

[Anderson]: Yes, sir.

* * *

> **[Trial Court]: Do you understand if you're not released when your minimum term ends, you will serve an additional specified period of time and will be given a new release date?**
>
> **[Anderson]: Yes, sir.**
>
> **[Trial Court]: Do you understand you'll be released on that date unless you were, again, denied release?**
>
> **[Anderson]: Yes, sir.**
>
> **[Trial Court]: Do you understand that this process could repeat until you are released or until you finish you maximum term?**
>
> **[Anderson]: Yes, sir.**
>
> **[Trial Court]: All right. So if my math is right, if you received the maximum term on a maximum sentence under the F2, that would be 12 years; on the F3 would be an additional three years, which would total 15, and on the F5, that would be an additional year, which would be 16 years. If all of the maximums came into play and I made the sentencing consecutive, the amount of time that you would be facing at the very, very most would be 16 years in prison. Do you understand that?**
>
> **[Anderson]: Yes, sir.**

Tr. 13-17. Following this explanation of indefinite sentencing, the trial court informed Anderson that the prison terms he received for these three offenses could be run consecutively. Tr. 19. The trial court also told Anderson that, if it ordered the maximum sentence for each offense and imposed these prison terms consecutively, he could face a total of sixteen years in prison. Tr. 19.

{¶14} In this plea colloquy, the trial court did not merely "mention[]" indefinite sentencing. *Clark, supra*, at ¶ 32. Rather, the trial court provided a

thorough explanation of indefinite sentencing and its implications for Anderson. Tr. 13-17. In response, Anderson affirmed that he understood each aspect of the trial court's explanation. Tr. 13-17. Having considered the entirety of the Crim.R. 11 plea colloquy, we conclude that Anderson has not identified a deficiency in the trial court's explanation of indefinite sentencing. We further find that the totality of the circumstances indicates that Anderson understood the implications of his guilty plea with regard to the maximum penalty that he faced.

{¶15} Anderson next argues that the trial court should have been aware that he did not understand that he could receive an indefinite sentence because he stated, at the change of plea hearing, that he believed he was going to have a prison term of seven years. Tr. 9. However, Anderson made this statement before the trial court engaged in the Crim.R. 11 plea colloquy. In response to this statement, the trial court clearly cautioned Anderson that it was not bound by the jointly recommended, seven-year prison term. Tr. 10. The trial court also clearly explained to Anderson, during the Crim.R. 11 colloquy, that he could receive up to sixteen years in prison if he pled guilty. Tr. 19.

{¶16} On appeal, Anderson has not demonstrated that his guilty plea was not knowingly, intelligently, or voluntarily entered. In this case, the trial court thoroughly explained the maximum penalty for each of charges against Anderson before he pled guilty. Further, the Crim.R. 11 plea colloquy included an extensive explanation of indefinite sentencing. Having reviewed the materials in the record,

we conclude that Anderson's arguments are without merit. Thus, Anderson's sole assignment of error is overruled.

*Conclusion*

**{¶17}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Logan County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**SHAW, P.J. and PRESTON, J., concur.**