The STATE ex rel. MASTERS, Relator,

v.

NATIONSWAY TRANSPORT SERV., INC. et al., Respondents.

[Cite as State ex rel. Masters v. Nationsway Transport Serv., Inc., 174 Ohio App.3d 526, 2008-Ohio-295.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–167.

Decided Jan. 29, 2008.

Butkovich, Crosthwaite & Gast Co., L.P.A., Joseph A. Butkovich, and Erin C. McCune, for relator.

Marc Dann, Attorney General, and William R. Creedon, Assistant Attorney General, for respondent Industrial Commission of Ohio.

SADLER, Judge.

{¶ 1} Relator, Homer Masters, commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order denying relator's application for permanent total disability ("PTD") compensation and to issue a new order finding that relator is entitled to PTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate, who issued a decision including findings of fact and conclusions of law (attached as Appendix A). Therein, the magistrate concluded that the commission did not abuse its discretion and recommended that this court not issue a writ of mandamus. Relator filed objections to the magistrate's decision, and the commission filed a memorandum opposing the objections. This cause is now before the court for a full review.

{¶ 3} Relator lodges three objections to the magistrate's decision. First, he objects to the magistrate's conclusions regarding purported inconsistencies between Dr. Rutherford's report and his deposition. With respect to this issue, relator simply reargues the same points he argued before the magistrate, and his arguments are no more persuasive at this juncture. Upon a thorough review of the transcript of Dr. Rutherford's deposition and his report, we agree that there are no contradictions or repudiations that render Dr. Rutherford's opinions equivocal. Relator's first objection is overruled.

{¶ 4} Second, relator argues that the magistrate failed to address his argument that Dr. Loimil's report is stale and that therefore Dr. Rutherford's conclusions

cannot be based on any of the objective findings contained in the Loimil report. He argues that the magistrate erred in justifying Dr. Rutherford's reliance on the Loimil report by virtue of the fact that the various examining physicians' objective findings were virtually the same both before and after the allowance of the additional condition of degenerative disc disease ("DDD"). But as the magistrate emphasized, Dr. Rutherford relied not only on Dr. Loimil's objective findings, but also on those of Dr. Orphanos. Thus, even if Dr. Loimil's report, standing alone, is stale, Dr. Rutherford could—and did—nonetheless rely upon Dr. Orphanos's report. It is true that the magistrate mentioned that the differences in the two reports were slight, but this was not the primary focus of the magistrate's analysis.

{¶ 5} The magistrate noted that the purpose of Dr. Orphanos's examination was to determine whether relator's claim should be additionally allowed for DDD, and he opined that relator's claim should be additionally allowed for that condition. Thus, Dr. Orphanos's objective medical findings would have reflected the effects of DDD on relator's condition. Accordingly, it was appropriate for Dr. Rutherford to base his opinion on Dr. Orphanos's objective findings. For these reasons, relator's second objection is overruled.

{¶ 6} In his third and final objection, relator argues that the magistrate erred in rejecting his argument that Dr. Rutherford's report is not "some evidence" because Dr. Rutherford did not accept all of the examining physicians' objective medical findings. A nonexamining physician must examine all of the medical evidence generated prior to that time and accept the findings of fact contained therein. *State ex rel. Timmerman Truss, Inc. v. Indus. Comm.*, 102 Ohio St.3d 244, 2004-Ohio-2589, 809 N.E.2d 15, ¶ 27, citing *State ex rel. Wallace v. Indus. Comm.* (1979), 57 Ohio St.2d 55, 11 O.O.3d 216, 386 N.E.2d 1109.

{¶ 7} As the magistrate noted, the only reports in the record that contain objective medical findings are those of Drs. Loimil, Wardlow, Orphanos, and Carlson. Relator argues that the magistrate ignored the fact that Dr. Rutherford did not accept Dr. Wardlow's objective findings. We agree. Our review of Dr. Rutherford's report reveals that he made no mention whatsoever of Dr. Wardlow's report, let alone any of Dr. Wardlow's objective findings. This "[p]resents a textbook example of a nonexamining physician's failure to comply with the *Wallace* rule." *State ex rel. West v. Goffena Furniture, Inc.*, Franklin App. No. 01AP–1334, 2002-Ohio-4775, 2002 WL 31031268, ¶ 43. Conspicuous lack of reference to a report generated prior to Dr. Rutherford's file review suggests that he may have overlooked the report. Under those circumstances, Dr. Rutherford's report cannot constitute "some evidence" upon which the commission could rely. *State ex rel. Bowie v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 458, 460–461, 663 N.E.2d 926. Even under an implicit

acceptance analysis, Dr. Rutherford's report does not constitute some evidence because it contains no indication, express or implied, that he accepted the objective medical findings contained in the Wardlow report. *State ex rel. Lampkins v. Dayton Malleable, Inc.* (1989), 45 Ohio St.3d 14, 16, 542 N.E.2d 1105. For these reasons, relator's third objection is sustained.

{¶ 8} We adopt the findings of fact contained in the magistrate's decision, and the conclusions of law therein, except for those related to whether Dr. Rutherford accepted all objective medical findings of the examining physicians, and we substitute those conclusions with our own, as set forth hereinabove. Therefore, we issue a writ of mandamus ordering the commission to vacate its order denying relator's application for PTD and to enter a new order either granting or denying the PTD application in a manner consistent with this decision.

Objections overruled in part
and sustained in part,
and writ granted.

McGRATH, P.J., and FRENCH, J., concur.

APPENDIX A

IN MANDAMUS

{¶ 9} Relator, Homer Masters, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order that denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that relator is entitled to that compensation.

*Findings of Fact:*

{¶ 10} 1. Relator sustained a work-related injury on January 5, 1997, and his claim was initially allowed for "sprain lumbar region."

{¶ 11} 2. Relator was able to return to his regular employment as a truck driver, and he worked in that capacity until the end of 1999. As the commission noted, the record does not explain why relator stopped working.

{¶ 12} 3. Near the time relator stopped working, he was examined by Luis A. Loimil, M.D. In his September 1999 report, Dr. Loimil provided the following objective findings upon examination: lumbar flexion 59 degrees; lumbar extension 15 degrees; right lateral tilt 26 degrees; left lateral tilt 31 degrees; straight leg raising right 56 degrees; and straight leg raising left 52 degrees. Dr. Loimil opined that relator had a ten percent permanent partial impairment, had reached maximum medical improvement ("MMI"), and could return to his former position of employment.

{¶ 13} 4. A February 2000 MRI revealed degenerative disc disease ("DDD") L5–S1 with no disc herniation.

{¶ 14} 5. An independent medical examination was performed by Vincent E. Wardlow, D.C., in October 2000. Dr. Wardlow provided the following objective findings upon physical examination: lumbar flexion 40 degrees; lumbar extension 20 degrees; right bending 25 degrees; left bending 20 degrees; straight leg raising right 50 degrees; and straight leg raising left 50 degrees. Dr. Wardlow did not provide an opinion concerning the percentage of impairment and opined that relator could not return to sustained remunerative employment.

{¶ 15} 6. Relator was examined by George J. Orphanos, M.D., in November 2000. The purpose of the examination was to determine whether the condition of DDD L5–S1 was directly related to the work-related injury. Dr. Orphanos opined that relator's claim should be additionally allowed for DDD L5–S1. Further, Dr. Orphanos provided the following objective findings upon physical examination: lumbar flexion 55 degrees; lumbar extension 30 degrees; side bend right 25 degrees; side bend left 28 degrees; straight leg raising right 35 degrees; and straight leg raising left 35 degrees. Dr. Orphanos opined that relator had a 12 percent impairment and could return to light-duty work.

{¶ 16} 7. In February 2001, relator requested that his claim be additionally allowed for DDD L5–S1. Relator submitted the report of Dr. Orphanos as well as reports from one of his treating physicians, Dr. James G. Bambino, who also opined that relator's claim should be additionally allowed for DDD L5–S1. The record contains several reports from Dr. Bambino; however, none of those reports contain objective physical findings.

{¶ 17} 8. In May 2001, relator's claim was additionally allowed for "degenerative disc disease L5–S1."

{¶ 18} 9. In November 2001, relator filed his application for PTD compensation.

{¶ 19} 10. The record also contains reports by Clifford H. Carlson, M.D. Because of the disparity between Dr. Carlson's opinion and the opinions of Dr. Bambino and Michael J. Kominsky, D.C. (who worked in the same office), a deposition of Dr. Carlson was taken. Ultimately, Dr. Carlson provided the following objective findings upon examination: lumbar flexion 19 degrees; lumbar extension 17 degrees; lumbar extension right 24 degrees; lumbar extension left 20 degrees; straight leg raising right 49 degrees; and straight leg raising left 47 degrees. Dr. Carlson opined that relator had an eight percent whole person impairment and that he was capable of performing at a medium strength level.

{¶ 20} 11. Because there were discrepancies in the reports of Dr. Carlson and his deposition testimony, the commission referred relator to James H. Rutherford, M.D., for an examination. However, relator could not be examined because

he had been further incapacitated after suffering a stroke and was confined to a nursing home.  Consequently, Dr. Rutherford conducted a file review for the commission.  In his February 2005 report, Dr. Rutherford identified all of the evidence before him and summarized the findings and opinions of the various doctors.  Dr. Rutherford stated that in his opinion, the reports of Drs. Bambino and Kominsky, both connected with the Kominsky Chiropractic Center, were somewhat inconsistent.  Dr. Rutherford noted that Dr. Kominsky described the physical demand level as light and yet restricted relator to sitting only 30 minutes at a time and only 30 minutes in an eight-hour workday while standing for only one hour in an eight-hour workday.  With regard to actual clinical findings, Dr. Rutherford found the opinions and findings of Drs. Loimil and Orphanos to be the most consistent.  Taking into account the actual clinical physical findings upon examination of Drs. Loimil and Orphanos, Dr. Rutherford opined that relator had reached MMI and assessed a five percent whole person impairment based on the American Medical Association ("AMA") Guides to Evaluation of Permanent Impairment, Fourth Edition.  Dr. Rutherford specifically noted that Dr. Orphanos had utilized a range model and had arrived at a 12-percent impairment.  Dr. Rutherford noted that the impairment level was appropriate given that Dr. Orphanos had utilized the range model instead of the AMA Guide. Dr. Rutherford noted that relator suffered from many significant nonallowed medical conditions:  excessive weight of over 300 pounds, hypertension, chronic bronchitis, emphysema, carotid artery disease, degenerative arthritis in multiple joints, and the stroke that had left relator paralyzed on the left side and incontinent.  Based solely upon the allowed conditions, Dr. Rutherford opined that relator could perform sedentary work with occasional standing and walking; could lift up to ten pounds occasionally; was prohibited from stooping and bending below knee level as well as climbing;  and could drive for his own transportation, but could not drive heavy equipment.

{¶ 21} 12.  The commission permitted relator to depose Dr. Rutherford because he had relied upon the physical findings of Drs. Orphanos and Loimil, which relator argued were prepared before his claim was additionally allowed for DDD L5–S1. Relator asked Dr. Rutherford to define just how much of an eight-hour workday relator would be expected to stand and walk around.  Dr. Rutherford estimated that relator could stand approximately ten minutes every hour.  In an eight-hour workday, that would equate to roughly two and one-half hours.  Further, Dr. Rutherford estimated that relator could stand or walk for as much as 30 minutes.

{¶ 22} 13.  Relator's application was heard before a staff hearing officer ("SHO") in July 2005 and was denied.  The SHO relied upon Dr. Rutherford's

medical file review and concluded that relator could perform sedentary work. Thereafter, the SHO discussed the nonmedical factors and concluded:

The injured worker's age of 67 is not found to be a positive vocational asset. His work history is found to be a positive vocational asset. It was a long and steady work history in many different areas, some of which, specifically insurance salesperson and railroad assistant terminal supervisor, would have provided him with skills that are transferable to sedentary work. His education is found to be a positive vocation[al] asset, as he did obtain his GED. Furthermore, he indicated on the application that he can read, write, and do basic math, which is a self assessment that he possesses more than basic skills in these academic areas. While his current age would realistically prevent him from participating in a formal academic retraining program, he would still be capable of completing a short on-the-job training program. The Staff Hearing Officer finds that the injured worker's non-medical disability factors on the whole are positive in terms of his potential for returning to several types of semi-skilled sedentary work. He would be appropriate for potential employment as a truck dispatcher, clerk at a trucking company, and a small parcel delivery person.

{¶ 23} 14. Thereafter, relator sought a writ of mandamus in this court.

Conclusions of Law:

{¶ 24} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631. A clear legal right to a writ of mandamus exists when the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.* (1986), 26 Ohio St.3d 76, 26 OBR 66, 497 N.E.2d 70. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.* (1987), 29 Ohio St.3d 56, 29 OBR 438, 505 N.E.2d 962. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact-finder. *State ex rel. Teece v. Indus. Comm.* (1981), 68 Ohio St.2d 165, 22 O.O.3d 400, 429 N.E.2d 433.

{¶ 25} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.* (1994), 69 Ohio St.3d 693, 635 N.E.2d 372. Generally, in making this determination, the commission must consider not

only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245.

{¶ 26} In this mandamus action, relator contends that the commission abused its discretion when it denied his application for PTD compensation. First, relator contends that the report of Dr. Rutherford does not constitute some evidence upon which the commission could rely because his report was inconsistent with his deposition testimony, he relied upon the report of Dr. Loimil which was stale, and he relied on the reports of Drs. Loimil and Orphanos, which were authored before his claim was allowed for the additional conditions. Relator also argues that in reality, Dr. Rutherford did not accept the findings of the examining physicians. For the reasons that follow, the magistrate rejects relator's argument.

{¶ 27} It is undisputed that equivocal medical opinions do not constitute evidence upon which the commission can rely. It is further undisputed that where a doctor repudiates his former opinion, that report likewise does not constitute some evidence upon which the commission can rely. See *State ex rel. Eberhardt v. Flxible Corp.* (1994), 70 Ohio St.3d 649, 640 N.E.2d 815.

{¶ 28} In his report and deposition testimony, Dr. Rutherford continued to opine that relator was capable of performing at a sedentary-work level. Relator's counsel repeatedly asked Dr. Rutherford questions concerning relator's abilities. Dr. Rutherford continuously provided answers that indicated that he believed relator was capable of sedentary employment.

{¶ 29} Sedentary work is defined in the Ohio Adm.Code 4121–3–34(B)(2)(a):

"Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

{¶ 30} Counsel pointed to the reports of other doctors and asked Dr. Rutherford how, with those restrictions, relator could perform sedentary work. Dr.

Rutherford responded by noting there were certain inconsistencies in the reports of Drs. Bambino, Kominsky, and Carlson and that, in his opinion, those reports could not be relied upon. When pushed, Dr. Rutherford opined that relator could sit for 50 minutes before needing to get up and walk around for ten minutes. He also stressed that this was simply an estimate.

{¶ 31} Relator simply has not demonstrated that there are inconsistencies between the report of Dr. Rutherford and his deposition testimony that necessitate removing his report from evidentiary consideration. Relator repeatedly quotes from reports of other doctors, which Dr. Rutherford did not find to be credible as evidence, that Dr. Rutherford provided inconsistent opinions. However, upon review of the entire deposition testimony, the magistrate concludes that there are no inconsistencies.

{¶ 32} Relator also contends that Dr. Rutherford did not, in reality, accept the physical findings of the examining physicians. In this respect, the magistrate disagrees. It is important to note at the outset that there are only four reports in evidence that provided actual clinical findings. Those reports came from Drs. Loimil, Wardlow, Orphanos, and Carlson. While the other doctors, Drs. Bambino and Kominsky, made certain notations regarding tenderness and pain, those are subjective complaints and do not constitute objective clinical physical findings. Therefore, Dr. Rutherford was not required to accept statements indicating what difficulties relator had and when he had pain. Instead, he was required to accept the clinical objective findings. A review of his report indicates that he specifically identified the objective findings of each of the doctors who provided the same and ultimately based his opinion upon the findings from reports he found to be credible.

{¶ 33} Relator also argues that the commission abused its discretion by relying upon the report of Dr. Rutherford, because the report was stale. Relator bases this argument on the fact that Dr. Rutherford relied upon the reports of Drs. Loimil and Orphanos, who examined relator prior to the commission's order granting his request for additional allowances. This magistrate disagrees.

{¶ 34} Due to relator's circumstances, he was unable to attend an examination by Dr. Rutherford. Consequently, Dr. Rutherford could only review the medical evidence which was in the record. He did so. In his report, Dr. Rutherford identified the medical evidence, explained why he believed certain reports could not be relied upon, and indicated that he relied upon the objective findings of Drs. Loimil and Orphanos.

{¶ 35} The only doctors who provided their clinical objective findings upon examination were Drs. Loimil, Wardlow, Orphanos, and Carlson. Dr. Rutherford explained the inconsistencies in Dr. Carlson's reports and did not rely on his

report. The magistrate specifically identified the clinical findings of the doctors in the findings of fact, and the magistrate notes that there is not much discrepancy between the findings, with the exception of Dr. Carlson's finding of lumbar flexion. Dr. Carlson noted 19 degrees, while Drs. Loimil, Wardlow, and Orphanos noted 59 degrees, 40 degrees, and 55 degrees respectively. Further, Dr. Loimil assessed a ten percent impairment and opined that relator could return to his former job; Dr. Wardlow did not give a percentage of impairment and indicated that relator could not return to work; Dr. Orphanos found a 12–percent impairment and opined that relator could perform light-duty work; and Dr. Carlson gave relator an eight percent impairment and indicated that he could return to medium work. Again, as noted, there is not a large discrepancy between these reports, despite the fact that when you consider Dr. Loimil's report, there is a four-year difference in those reports. Further, the magistrate specifically notes that the purpose of Dr. Orphanos's examination of relator was to determine whether his claim should be allowed for DDD L5–S1. Dr. Orphanos examined relator with that in mind and concluded that his claim should be additionally allowed for those conditions. Therefore, in spite of the fact that relator's claim had not yet been allowed for DDD L5–S1, Dr. Orphanos specifically examined him for that condition and concluded that he had it and that it was directly related to the industrial injury; his physical findings would have taken that into account as well. Accordingly, the magistrate finds that relator's argument that the report of Dr. Rutherford was stale lacks merit.

{¶ 36} Lastly, relator contends that the commission abused its discretion by conducting its own analysis of the nonmedical disability factors instead of relying upon any of the several vocational reports that were in the record. It is well settled that the commission has discretion to accept one vocational report while rejecting another vocational report and that the commission is not required to explain its rationale. *State ex rel. Jackson v. Indus. Comm.* (1997), 79 Ohio St.3d 266, 680 N.E.2d 1233. Further, in *State ex rel. Singleton v. Indus. Comm.* (1994), 71 Ohio St.3d 117, 642 N.E.2d 359, the Supreme Court of Ohio stated that binding the commission to a rehabilitation report's conclusions makes the rehabilitation division, and not the commission, the ultimate evaluator of disability, contrary to *Stephenson*. Simply put, the commission is not required to rely on any vocational reports in the record and is competent to address and then consider the issue also. Therefore, this argument lacks merit as well.

{¶ 37} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.