[Cite as *State v. Harris*, 2021-Ohio-1431.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-29 |
| | : | |
| v. | : | Trial Court Case Nos. 2019-CR-817 |
| | : | |
| DAREZ LEON HARRIS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 23rd day of April, 2021.

. . . . . . . . . . .

IAN RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

MICHAEL PENTECOST, Atty. Reg. No. 0036803, 117 South Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Darez Leon Harris, appeals from his conviction in the Clark County Court of Common Pleas after he pled guilty to one count of failure to comply with the order or signal of a police officer.   In support of his appeal, Harris contends that the trial court erred by denying his post-sentence motion to withdraw his guilty plea without first holding an evidentiary hearing. Because the trial court's decision denying Harris's motion was based, in part, on the incorrect factual finding that Harris had been advised of the maximum possible penalty for his offense before entering his guilty plea, we find that the trial court abused its discretion in denying Harris's motion.   Also, because the record establishes that the trial court completely failed to comply with Crim.R. 11(C)(2)(a) by not advising Harris of the maximum possible penalty during its plea colloquy, Harris's guilty plea was not knowingly, intelligently, and voluntarily entered and must therefore be vacated.   The judgment denying Harris's post-sentence motion to withdraw his guilty plea will be reversed, Harris's guilty plea will be vacated, and the matter will be remanded to the trial court for further proceedings.

**Facts and Course of Proceedings**

{¶ 2} On December 16, 2019, a Clark County grand jury returned an indictment charging Harris with one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B)/(C)(5), a felony of the third degree.   The charge arose after law enforcement officers attempted to stop Harris's vehicle in order to arrest Harris on an outstanding warrant.   However, instead of complying with the officers' order to turn off his vehicle, Harris fled from the officers at a high rate of speed.   This resulted in a high-speed pursuit between Harris and the officers that almost caused an accident.

For safety reasons, the officers ultimately decided to terminate their pursuit of Harris. Harris was later arrested in Franklin County, Ohio.

{¶ 3} On June 22, 2020, Harris entered a guilty plea to the charged offense. In exchange for his guilty plea, the State agreed to dismiss a failure to comply charge against Harris in an unrelated case—Clark C.P. No. 2019-CR-754. The parties made no agreement as to Harris's sentence but did agree to have a presentence investigation conducted. After conducting a plea colloquy, the trial court accepted Harris's guilty plea as being knowingly, intelligently, and voluntarily entered. The record of the plea hearing, however, indicates that the trial court failed to advise Harris of the maximum possible penalty he faced by entering a guilty plea. Nevertheless, upon accepting Harris's plea, the trial court scheduled the matter for sentencing.

{¶ 4} On July 17, 2020, the trial court held a sentencing hearing and sentenced Harris to 36 months in prison with 13 days of jail-time credit. The trial court also suspended Harris's driving privileges for five years and ordered Harris to pay court costs. Immediately after the trial court imposed its sentence, Harris orally moved the trial court to withdraw his guilty plea. After the following discussion with Harris, the trial court denied Harris's motion.

DEFENDANT: I'm not understanding.

THE COURT: What's not to understand?

DEFENDANT: I feel like I didn't really know what I was pleading to. There was no substantial evidence.

THE COURT: Okay. Well, you did know what you were pleading to because I went over [it] with you in quite detail.

DEFENDANT:     And I want —

THE COURT:     Part of the agreement was the State was dismissing the other charge pending against you for failure to comply.

DEFENDANT:     I would like to withdraw my plea because I feel like there was no substantial evidence besides a cop saying he saw me. There were no cameras. There were no [sic] apprehension. There was no – I wasn't arrested. I felt like I just agreed with the system to just get the case over, get on probation, get back to my children.

THE COURT:     I see. You were not told that you were gonna get community control, were you?

DEFENDANT:     No, I was told it was an option.

THE COURT:     You were told what the possible maximum penalty would be. All the information you just stated to me you knew at the time of your plea. So it appears to the Court that all you're doing is having a change of heart.

DEFENDANT:     I'm not –

THE COURT:     Request for change of plea is denied. You want to proceed more formally, you're certainly welcome to do so.

Sentencing Trans. (July 17, 2020), p. 17-18.

{¶ 5} Harris never filed a formal post-sentence motion to withdraw his guilty plea. Harris instead filed the instant appeal from his judgment of conviction, raising one assignment of error for review.

**Assignment of Error**

{¶ 6} Under his sole assignment of error, Harris contends that the trial court erred by denying his post-sentence motion to withdraw his guilty plea without first holding an evidentiary hearing.

{¶ 7} As a preliminary matter, we note that the trial court's decision denying Harris's post-sentence motion to withdraw his guilty plea can be challenged in this direct appeal because the trial court's decision was an interlocutory order that merged into the final judgment of conviction filed by the trial court. *See State v. Cochran*, 2d Dist. Clark No. 09-CA-49, 2010-Ohio-2917, ¶ 13 (trial court's oral decision overruling motion to withdraw guilty plea at a re-sentencing hearing was an interlocutory order that became final and appealable as a result of the final judgment of conviction being rendered). *See also USA Freight, L.L.C. v. CBS Outdoor Group*, Inc., 2d Dist. Montgomery No. 26425, 2015-Ohio-1474, ¶ 15.

{¶ 8} "Under Crim.R. 32.1, a trial court may permit a defendant to withdraw a plea after imposition of sentence only to correct a manifest injustice." (Citations omitted.) *State v. Ray*, 2d Dist. Champaign No. 2019-CA-31, 2020-Ohio-4769, ¶ 11. A defendant may establish a manifest injustice " 'by showing that he did not enter the guilty plea in a knowing, intelligent, or voluntary manner.' " *State v. Leifheit*, 2d Dist. Clark No. 2019-CA-78, 2020-Ohio-5106, ¶ 16, quoting *State v. Riley*, 4th Dist. Washington No. 16CA29,

2017-Ohio-5819, ¶ 18. (Other citations omitted.) To ensure that a defendant is entering a felony plea knowingly, intelligently, and voluntarily, the trial court must engage the defendant personally and explain the rights set forth in Crim.R. 11(C)(2) before accepting the plea. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 27. Crim.R. 11(C)(2)(a) specifically requires the trial court to explain, among other things, "the maximum penalty involved[.]"

{¶ 9} " 'A hearing [on a post-sentence motion to withdraw a guilty plea] is required only if the facts alleged by the defendant, if accepted as true, would require the plea to be withdrawn.' " *State v. Hall*, 2d Dist. Greene No. 2011-CA-32, 2012-Ohio-2539, ¶ 12, quoting *State v. McComb*, 2d Dist. Montgomery Nos. 22570, 22571, 2008-Ohio-295, ¶ 19. That is, " '[t]he movant must establish a reasonable likelihood that withdrawal of his plea is necessary to correct a manifest injustice before a trial court must hold a hearing on his motion.' " *Ray* at ¶ 14, quoting *State v. Stewart*, 2d Dist. Greene No. 2003-CA-28, 2004-Ohio-3574, ¶ 6. " '[N]o hearing is required on a post-sentence motion to withdraw a plea where the motion is supported only by the movant's own self-serving affidavit, at least when the claim is not supported by the record.' " *Id.*

{¶ 10} "We review a trial court's decision on a post-sentence motion to withdraw guilty plea and on a decision granting or denying a hearing on the motion for an abuse of discretion." *State v. Ogletree*, 2d Dist. Clark No. 2014-CA-16, 2014-Ohio-3431, ¶ 11, citing *Xenia v. Jones*, 2d Dist. Greene No. 07-CA-104, 2008-Ohio-4733, ¶ 6. Most instances of abuse of discretion occur when a trial court makes a decision that is unreasonable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if

there is no sound reasoning process that would support that decision." *Id.* "A court's reasoning process is not 'sound,' and is therefore unreasonable, when it relies on incorrect facts." (Citations omitted.) *Pieczonka v. Pieczonka*, 1st Dist. Hamilton No. C-170173, 2017-Ohio-8899, ¶ 8. Therefore, "[a]n abuse of discretion may be found when the trial court '* * * relies on clearly erroneous findings of fact.' " *State v. Johnson*, 8th Dist. Cuyahoga No. 107617, 2019-Ohio-2332, 138 N.E.3d 560, ¶ 12, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.); *State v. Selvaggio*, 11th Dist. Lake No. 2017-L-128, 2018-Ohio-3532, ¶ 12.

{¶ 11} As noted above, in support of his oral motion to withdraw his guilty plea, Harris generally claimed that he had not understood his plea. Harris also claimed that there had been no substantial evidence of his guilt, given that he was never arrested or video-recorded fleeing from the police. In denying the motion, the trial court found that Harris knew this information at the time of his plea, that the court went over the plea with Harris "in quite detail," and that Harris was "told what the possible maximum penalty would be." Sentencing Trans. (July 17, 2020), p. 17-18. However, the record of the plea hearing establishes that the trial court did not advise Harris of the maximum possible penalty for his offense before Harris entered his guilty plea. That information was wholly omitted from the trial court's plea colloquy.

{¶ 12} But for the trial court's erroneous finding as to the maximum penalty advisement, we would have found it reasonable for the trial court to deny Harris's post-sentence motion to withdraw his guilty plea without first holding an evidentiary hearing. This is because Harris's motion was based on a bare, general assertion that he did not understand his plea. Furthermore, Harris's claim that there was no substantial evidence

of his guilt was based on information known to Harris before he entered his plea; thus, Harris cannot reasonably contend that said information would have caused him not to plead guilty. Therefore, the record indicates that Harris did not establish a reasonable likelihood that the withdrawal of his guilty plea was necessary to correct a manifest injustice.

{¶ 13} Nevertheless, the record indicates that when ruling on Harris's motion to withdraw his guilty plea, the trial court incorrectly found that it had advised Harris of the maximum possible penalty he could receive for his offense. Therefore, because the trial court relied on that incorrect factual finding when ruling on the motion, we find, for that reason alone, the trial court abused its discretion when it denied Harris's post-sentence motion to withdraw his guilty plea without a hearing.

{¶ 14} At this juncture, we note that the only relief Harris seeks in his appeal is to have the judgment denying his motion to withdraw his guilty plea reversed and the matter remanded for an evidentiary hearing. Although not explicitly argued on appeal, the validity of Harris's guilty plea is an underlying issue that needs to be addressed under the circumstances of this case.

{¶ 15} "In order to satisfy the requirements of due process, a plea of guilty * * * must be knowing, intelligent, and voluntary, and the record must affirmatively demonstrate" as much. *State v. Chessman*, 2d Dist. Greene No. 2003-CA-100, 2006-Ohio-835, ¶ 15, citing *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). "In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C)." *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13. "[T]he rule 'ensures an adequate record on review

by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.' " *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975).

{¶ 16} Generally speaking, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). There are, however, two exceptions to this rule. *Id.* at ¶ 14-16.

{¶ 17} The first exception is that the trial court must comply strictly with Crim.R. 11(C)(2)(c) as it pertains to the waiver of federal constitutional rights. *Id.* at ¶ 14. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Id.*, citing *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 31.

{¶ 18} The second exception is that "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Emphasis sic.) *Id.* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. However, a defendant still must show prejudice if the trial court partially complied with Crim.R. 11(C) in regard to a non-constitutional right. *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 19.

{¶ 19} Pursuant to Crim.R.11(C)(2)(a), the trial court was required to personally address Harris in order to ensure that Harris understood the maximum possible penalty he could receive before pleading guilty. This is a non-constitutional right; therefore, if the

trial court completely failed to comply with this rule, Harris's plea may be vacated without his showing any prejudice.

{¶ 20} As previously discussed, the trial court did not advise Harris of the maximum possible penalty he faced during its plea colloquy. The trial court did, however, ensure that Harris reviewed and understood the written plea agreement, a form which set forth the maximum possible penalty that Harris faced. Some courts have held that discussing a written plea form (which contains the maximum possible penalty) at the plea hearing and ensuring that the defendant understands its contents amounts to substantial compliance with Crim.R. 11(C)(2)(a). *See, e.g., State v. Dorsey*, 6th Dist. Lucas No. L-15-1174, 2016-Ohio-740, ¶ 11; *State v. Williams*, 10th Dist. Franklin No. 10AP-1135, 2011-Ohio-6231, ¶ 39-41. However, since the Supreme Court of Ohio's decision in *Dangler*, it has been held that simply ensuring that a defendant understands a written plea form is not a cure for the trial court's complete failure to orally advise the defendant about the maximum possible penalty at the plea hearing. *See State v. Rogers*, 2020-Ohio-4102, 157 N.E.3d 142, ¶ 14-26 (12th Dist.).

{¶ 21} In *Rogers,* the Twelfth District Court of Appeals reviewed whether there was a complete failure to comply with Crim.R. 11(C)(2)(a) under circumstances where the trial court failed to advise the defendant of a mandatory fine during the plea colloquy. The trial court, however, ensured that the defendant reviewed, signed, and understood the written plea agreement, which set forth the mandatory fine. Under those circumstances, the Twelfth District explained that:

> Pursuant to Crim.R. 11(C)(2), a trial court's determination that a defendant entering a guilty plea understands the maximum penalty involved

must precede the court's acceptance of the plea. This is accomplished by the trial court "addressing the defendant personally." Neither post-colloquy events nor a plea form signed by a defendant are relevant in reviewing whether a trial court has complied with Crim.R. 11(C)(2). The trial court's failure to advise Rogers of the mandatory fine during the plea colloquy does not comply with the requirement of Crim.R. 11(C)(2)(a) that a trial court "first" determine a defendant's understanding of the maximum penalty before accepting the plea. Neither does Rogers' mere execution of the plea form satisfy the requirement of Crim.R. 11(C)(2)(a) that the trial court "personally address" a defendant to determine that the plea is entered with an understanding of the maximum penalty involved.

We note that Rogers and the state both discuss whether the trial court substantially complied with Crim.R. 11(C)(2) during the plea colloquy. In particular, the state cites a case for the proposition that a trial court's acceptance of a guilty plea without advising the defendant that a fine could be imposed constitutes substantial compliance with Crim.R. 11(C)(2)(a) where the defendant signs a plea agreement before entering his guilty plea that informs him of the fine. See State v. Mohr, 3d Dist. Van Wert No. 15-98-05, 1999 WL 797048 (Sept. 16, 1999). This reflects the law that was applicable at the time the parties filed their briefs. However, a recent decision of the Ohio Supreme Court reveals that whether a trial court substantially complies with Crim.R. 11(C)(2) is no longer part of the analysis in reviewing a trial court's plea colloquy. See [State v. Dangler, 162 Ohio

St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286].

*Rogers* at ¶ 14-15.

{¶ 22} *Rogers* then discussed what constituted a "complete failure to comply" with Crim.R. 11(C)(2)(a) and stated that:

"[A] trial court's total failure to inform a defendant of a distinct component of the maximum penalty during a plea colloquy constitutes a complete failure to comply with Crim.R. 11(C)(2)(a), thereby requiring the vacation of the defendant's guilty or no contest plea." [*State v. Fabian*, 12th Dist. Warren No. CA2019-10-119, 2020-Ohio-3926, ¶ 20]. "Or stated differently, a complete failure to comply with Crim.R. 11(C)(2)(a) involves a trial court's complete omission in advising about a distinct component of the maximum penalty. By contrast, a trial court's mention of a component of the maximum penalty during a plea colloquy, albeit incomplete or perhaps inaccurate, does not constitute a complete failure to comply with Crim.R. 11(C)(2)(a)." *Id.*

*Id.* at ¶ 19.

{¶ 23} In applying these principles, *Rogers* held that:

The trial court did not simply misinform Rogers about the fine, such as the amount or whether it was mandatory or discretionary. Rather, the court made no mention of the fine during the plea colloquy. Consequently, the trial court's total failure to inform Rogers of the mandatory $7,500 fine, which was a part of the maximum penalty, before it accepted the guilty plea constituted "a trial court's *complete* failure to comply with a portion of

Crim.R. 11(C)" pursuant to the second exception to the prejudice requirement. (Emphasis sic.) *Sarkozy*, 2008-Ohio-509 at ¶ 22, 117 Ohio St.3d 86, 881 N.E.2d 1224.

*Rogers,* 2020-Ohio-4102, 157 N.E.3d 142, at ¶ 23.

**{¶ 24}** In reference to the written plea form, *Rogers* further explained that:

The record further suggests that Rogers was aware he faced a mandatory $7,500 fine based upon the plea form he signed which plainly indicated a mandatory fine of $7,500 on Count 2. However, while "[a] written acknowledgment of a guilty plea and a waiver of trial rights executed by an accused can, in some circumstances, reconcile ambiguities in the oral colloquy that Crim.R. 11(C) prescribes, * * * the writing does not substitute for an oral exchange when it is wholly omitted." *State v. Dixon*, 2d Dist. Clark No. 2001-CA-17, 2001 WL 1657836, *3 (Dec. 28, 2001). "Crim.R. 11(C) requires that form of exchange to insure that the defendant makes a voluntary and intelligent decision whether to plead guilty." *Id.* "This court examines compliance with Crim.R. 11 by examining the trial court's communication to the defendant, not the defendant's subjective understanding of his rights." *State v. Gipson,* 1st Dist. Hamilton No. C-970891, 1998 WL 682153, *3 (Sept. 30, 1998).

In light of all of the foregoing, we find that the trial court completely failed to comply with Crim.R. 11(C)(2)(a) and Rogers' guilty plea was not knowingly, intelligently, and voluntarily made.

*Id.* at ¶ 25-26.

{¶ 25} We note that *Dixon*, 2d Dist. Clark No. 2001-CA-17, 2001 WL 1657836, involved the trial court's failure to advise the defendant of one of the constitutional rights under Crim.R. 11(C)(2)(c). However the statement *Rogers* cited in *Dixon* is not limited to constitutional advisements, as *Dixon* stated the following:

> A written acknowledgment of a guilty plea and a waiver of trial rights executed by an accused can, in some circumstances, reconcile ambiguities in the oral colloquy that Crim.R. 11(C) prescribes. However, the writing does not substitute for an oral exchange when it is wholly omitted. Crim.R. 11(C) requires that form of exchange to insure that the defendant makes a voluntary and intelligent decision whether to plead guilty. On appellate review, "the focus ... is whether the record shows that the trial court referred to the right in a manner reasonably intelligible to that defendant." [*State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph two of the syllabus.]

*Id.* at *3.

{¶ 26} Like the defendant in *Rogers*, Harris might have been aware of the maximum penalty he faced by virtue of reviewing the written plea agreement. However, *Rogers* and *Dixon* both indicate that simply ensuring that a defendant understands a written plea form is not a cure for the trial court's complete failure to orally advise a defendant about the maximum possible penalty during the plea colloquy. In so holding, we note that this case is distinguishable from this court's recent decision in *State v. Ebbing*, 2d Dist. Montgomery No. 28823, 2021-Ohio-865, ¶ 20, wherein we found partial compliance with Crim.R. 11(C)(2)(a) under circumstances where the trial court advised

the defendant of the maximum possible penalty at the plea hearing save for completely omitting the fact that the trial court could impose a discretionary five-year license suspension, which the court ultimately never imposed. Unlike *Ebbing*, the trial court in this case completely failed to advise Harris about any aspect of the maximum possible penalty he faced, i.e. that he could receive 36 months in prison, a $1,000 fine and a three-year license suspension. Therefore, because the trial court's plea colloquy completely failed to comply with the maximum penalty portion of Crim.R. 11(C)(2)(a), we find that no showing of prejudice is required to vacate Harris's guilty plea.

{¶ 27} Harris's sole assignment of error is sustained.

## Conclusion

{¶ 28} Having sustained Harris's sole assignment of error, the trial court's judgment denying Harris's post-sentence motion to withdraw his guilty plea is reversed, Harris's guilty plea is vacated, and the matter is remanded to the trial court for further proceedings.

. . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J. concur.

Copies to:

Ian Richardson
Michael Pentecost
Hon. Richard J. O'Neill