[Cite as *State v. Edmonson*, 2025-Ohio-4314.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2025-01-006 |
| | | CA2025-01-007 |
| | : | |
| - vs - | : | <u>OPINION AND</u> |
| | : | <u>JUDGMENT ENTRY</u> |
| | | 9/15/2025 |
| CHARLES ROBERT EDMONSON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case Nos. 2024-CR- 00457; 2024-CR-00552

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.

# **O P I N I O N**

**M. POWELL, J.**

{¶ 1} Defendant, Charles Edmonson, appeals from his convictions for endangering children, felonious assault, and kidnapping. We affirm his convictions but

remand so that the trial court can issue nunc pro tunc judgment entries of conviction that accurately reflect the court's determinations during the plea proceeding.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} On December 27, 2024, the trial court held a consolidated plea and sentencing hearing in which Edmonson entered guilty pleas to felony charges across multiple cases under a plea agreement.

{¶ 3} The charges against Edmonson originated from three separate indictments. On June 25, 2024, the grand jury first indicted Edmonson on five counts of endangering children in Case No. 2024 CR 434. Two weeks later, on July 9, 2024, the grand jury returned a second indictment in Case No. 2024 CR 457, charging Edmonson with 26 counts: 19 counts of endangering children as second-degree felonies under various subsections of R.C. 2919.22, and seven counts of felonious assault as second-degree felonies under R.C. 2903.11(A)(1). More charges emerged from a third indictment on August 27, 2024, in Case No. 2024 CR 552. This 22-count indictment included 12 counts of kidnapping as first-degree felonies, six counts of abduction as third-degree felonies, one count of attempted felonious assault as a third-degree felony, one count of assault as a fourth-degree felony, and two additional counts of endangering children as third-degree felonies. Each kidnapping count contained an identical specification stating: "FURTHERMORE, the victim of the offense was less than thirteen years of age and the defendant committed the offense of kidnapping with a sexual motivation." This specification created the potential for life imprisonment under R.C. 2905.01(C)(3), the kidnapping statute, which authorizes such sentences when two conditions are met: the victim is under 13 years of age, and the defendant is convicted of a sexual-motivation specification.

{¶ 4}   The parties reached a comprehensive plea agreement that resolved the charges across the cases while eliminating the possibility of a life sentence. Under the agreement's terms, Edmonson would plead guilty to five felony counts in two cases. In Case No. 2024 CR 457, he agreed to plead guilty to Counts III, IV, and V, each alleging endangering children as second-degree felonies, and to Count XXI, alleging felonious assault as a second-degree felony. In Case No. 2024 CR 552, he agreed to plead guilty to Count I, an amended charge of kidnapping. The parties agreed that the specification attached to Count I would be dismissed entirely, thereby removing both the age element and the sexual-motivation component that together created life-sentence exposure. In exchange for these pleas, the State agreed to dismiss with prejudice all remaining charges across the three cases, including the entirety of Case No. 2024 CR 434.

{¶ 5}   The parties also negotiated jointly recommended sentences totaling 15 to 22.5 years of imprisonment. The kidnapping charge would carry an 11- to 16.5-year term, while the four counts in Case No. 2024 CR 457 would each carry four- to six-year terms, with the latter to run concurrent to each other but consecutive to the kidnapping sentence.

{¶ 6}   At the plea and sentencing hearing, the trial court began by correctly outlining the plea terms, accurately identifying the specific counts to which Edmonson would plead guilty and explaining that the kidnapping charge would be amended to remove what the court termed "the specification." The court informed Edmonson that he would be pleading guilty to "Counts III, IV, V, and XXI in Case Number 2024 CR 457," describing these as "three endangering children counts and one felonious assault count, all second-degree felonies," and to "Count I in Case Number 2024 CR 552, kidnapping as a first-degree felony, with the specification removed."

{¶ 7}   But when the court attempted to explain the specific nature of each charge,

confusion emerged. Rather than addressing the counts to which Edmonson was actually pleading guilty, the court mistakenly began explaining Counts I and II of the indictment in Case No. 2024 CR 457, charges that were to be dismissed under the plea agreement. The court provided detailed explanations of these dismissed counts, describing them as involving torture or cruel abuse of children W.E.1 and S.E., occurring between July 13, 2018, and December 13, 2023. After explaining these irrelevant charges and receiving Edmonson's acknowledgment of understanding, the court recognized its error.

{¶ 8} The court attempted to correct course, stating: "Excuse me, Count IV. I started out with Counts I and II. They all read the same, but III, it's III and IV." The court then provided an explanation of Count IV, again detailing torture or cruel abuse allegations during the same time period but involving victim W.E.2. The court subsequently addressed Count XXI, the felonious-assault charge involving victim S.E. But despite having correctly identified Count V as one of the charges to which Edmonson would plead guilty, and despite the court's stated intention to review each count individually, the court entirely omitted any explanation of Count V. When the sequence of explanations should have reached Count V, the court instead moved directly to explaining Count XXI.

{¶ 9} The proceedings were further complicated by inconsistent terminology regarding the kidnapping specification. Throughout the hearing, the trial court used varying language to describe what was being dismissed, referring alternately to an "age specification," "sexual motivation specification," and simply "the specification." The court's explanation to Edmonson created particular ambiguity: "they're eliminating the specification that W.E. was under the age of 13. That way, and that the kidnapping was with a sexual motivation, which eliminates any possibility of any type of a life prison

sentence."

{¶ 10} This phrasing suggested the court understood that both components necessary for life imprisonment were being eliminated, yet the awkward construction left unclear whether the court was describing two separate elements or a single specification containing both. The written plea form referenced dismissal of "the specification" without further elaboration, treating the specification as a single unit to be removed entirely.

{¶ 11} Following the plea colloquy, the State provided a factual basis that correctly identified the charges as Counts III, IV, V, and XXI in Case No. 2024 CR 457 and Count I as amended in Case No. 2024 CR 552. The prosecutor's recitation included specific factual allegations corresponding to each count and properly identified the victims associated with each charge. For Count V specifically, the State alleged torture or cruel abuse of W.E.3, a child under 18 years of age, occurring between February 8, 2019, and December 13, 2023, resulting in serious physical harm.

{¶ 12} When asked whether he had any disagreement with the factual recitation, Edmonson responded negatively. The court then had Edmonson acknowledge and sign written plea forms, which correctly delineated the charges to which he was pleading and accurately reflected the terms negotiated by the parties.

{¶ 13} Based on the totality of the proceedings, the trial court found that Edmonson's pleas were entered knowingly, intelligently, and voluntarily. The court accepted the guilty pleas and immediately proceeded to sentencing, imposing the jointly recommended prison terms: 11 to 16.5 years on the kidnapping count and 4 to 6 years on each of the four counts in Case No. 2024 CR 457, with the latter terms to run concurrently with each other but consecutively to the kidnapping sentence. The court dismissed the remaining charges with prejudice as agreed.

{¶ 14} The trial court entered the judgments of convictions on December 30, 2024, but the entries contained two apparent clerical errors. The entry in Case No. 2024 CR 552 stated that Edmonson had pleaded guilty to kidnapping "amended to remove the age of the child element as to Count 1," without mentioning the sexual-motivation specification. In Case No. 2024 CR 457, page one of the entry characterized the felonious-assault conviction as "a felony of the first degree," despite the fact that R.C. 2903.11(A)(1) unambiguously classifies felonious assault as a second-degree felony.

{¶ 15} Edmonson appealed.

## II. ANALYSIS

{¶ 16} Edmonson raises four assignments of error challenging various aspects of the plea proceedings. The assignments of error focus primarily on the trial court's failure to properly explain Count V during the plea colloquy, confusion regarding the dismissal of the kidnapping specification, and error in the judgment entry that mischaracterized the degree of the felonious-assault conviction.

### A. The Trial Court's Failure to Memorialize Dismissal of the Sexual Motivation Specification

{¶ 17} The first assignment of error alleges:

THE TRIAL COURT ERRED, IN CASE NO. 2024 CR 0552,
IN NOT MEMORIALIZING IN THE SENTENCING ENTRY
THAT THE "SEXUAL MOTIVATION" SPECIFICATION HAD
BEEN DISMISSED.

{¶ 18} Edmonson contends that the trial court committed reversible error by failing to reflect in its judgment entry the complete terms of the plea agreement regarding the kidnapping charge in Case No. 2024 CR 552. The State agrees that correction is warranted.

{¶ 19} Understanding this assignment of error requires examining how Ohio's

kidnapping statute creates the possibility of life imprisonment. Under R.C. 2905.01(B)(2), the elements required to prove kidnapping depend on the victim's age. For adult victims, the prosecution must establish that the defendant used force, threat, or deception to create a substantial risk of serious physical harm. For victims under 13 years of age, however, the statute permits conviction based on the defendant's use of "any means" to either create a substantial risk of serious physical harm or cause physical harm to the victim.

{¶ 20} R.C. 2905.01(C)(3) establishes that a maximum prison term of life imprisonment becomes possible when two distinct conditions are satisfied: first, the victim must be less than 13 years of age, and second, the defendant must be convicted of or plead guilty to a "sexual motivation specification," which means that the offender's purpose in kidnapping the victim was "to gratify" his "sexual needs or desires," R.C. 2971.01(J).[1] Both conditions are essential; if either is absent, life imprisonment is not the required maximum under the statute.

{¶ 21} The age element and the sexual-motivation specification, while related, serve different legal functions. The victim's age affects the elements the prosecution must prove to establish the underlying kidnapping offense itself. The sexual-motivation specification, by contrast, constitutes a separate enhancement that triggers the possibility of life imprisonment when combined with the age element. The indictment's specification combined these distinct legal concepts in a single "Furthermore" clause, stating: "FURTHERMORE, the victim of the offense was less than thirteen years of age and the

---

1. R.C. 2971.01(J) defines "sexual motivation." R.C. 2971.01(K) defines "sexual motivation specification" as "a specification, as described in section 2941.147 of the Revised Code, that charges that a person charged with a designated homicide, assault, or kidnapping offense committed the offense with a sexual motivation." The kidnapping statute points to this meaning of "sexual motivation specification." R.C. 2905.01(D).

defendant committed the offense of kidnapping with a sexual motivation." This drafting created confusion throughout the proceedings, as evidenced by the trial court's varying references to an "age specification," "sexual motivation specification," and simply "the specification."

{¶ 22} The record indicates that the plea negotiations addressed both components necessary for life imprisonment. During the plea colloquy, the trial court explained that "they're eliminating the specification that W.E. was under the age of 13. That way, and that the kidnapping was with a sexual motivation, which eliminates any possibility of any type of a life prison sentence." This explanation, while awkwardly phrased, demonstrates the court's recognition that both elements contributing to life-sentence exposure were being modified. The court's reference to eliminating "any possibility of any type of a life prison sentence" suggests that both the age element of the underlying offense and the sexual-motivation specification were being addressed.

{¶ 23} The record demonstrates that the trial court agreed to modify the kidnapping charge in the manner necessary to eliminate life-sentence exposure entirely. Several factors support this conclusion. First, the court's explicit statement that removing the discussed elements would "eliminate any possibility of any type of a life prison sentence" reflects an understanding that both conditions for life imprisonment were being addressed. Had only the age element been modified, the sexual-motivation specification could still have triggered enhanced penalties. Second, the prosecutor's factual recitation made no reference to sexual motivation, confirming that this component was not part of Edmonson's plea. The State's factual basis described the offense as involving a child victim but omitted any allegation of sexual motivation, demonstrating that this element was not included in the charge to which Edmonson was pleading guilty. Third, the written

plea form consistently referred to dismissing "the specification" as a single unit, treating the improperly combined elements as one entity to be removed entirely.

{¶ 24} Despite the clarity of the court's decision during the plea proceedings, the judgment entry incompletely captured what had been decided. The written order stated only that Edmonson had pleaded guilty to kidnapping "amended to remove the age of the child element as to Count 1," without mentioning the sexual-motivation specification. This omission created a significant ambiguity. By referencing only the "age of the child element," the sentencing entry suggested that the sexual-motivation specification remained intact, which would have preserved the possibility of life imprisonment. Such an interpretation directly contradicts the court's explicit statements during the plea hearing.

{¶ 25} The incomplete description in the sentencing entry constitutes precisely the type of clerical error that nunc pro tunc authority is designed to remedy. Courts may correct judgment entries to ensure that "the record speaks the truth," but such corrections are limited in proper use to "reflect[ing] what the court actually decided." *State v. Lester*, 2011-Ohio-5204, ¶ 18. Crim.R. 36 provides the procedural mechanism for such corrections, authorizing courts to remedy "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors arising from oversight or omission." A clerical mistake is "a mistake[] or omission that is mechanical in nature and apparent on the record and does not involve a legal decision or judgment." *Lester* at ¶ 18.

{¶ 26} Here, the trial court actually decided to eliminate both components necessary for a maximum prison term of life imprisonment. The judgment entry's reference to one component only represents a mechanical error in describing that decision rather than a different substantive ruling. This error is apparent on the record, given the court's statements during the plea hearing. The error involves no legal decision

or judgment that was not already made during the plea proceedings. The judgment entry's partial description of that modification falls within Crim.R. 36's authorization to correct clerical mistakes and oversights.

{¶ 27} The trial court erred by failing to memorialize completely in the judgment entry the modifications made to the kidnapping charge as part of the plea agreement. While the court correctly noted the removal of the age element, it failed to reflect that the sexual-motivation specification was also eliminated. This constitutes a clerical error amenable to correction through nunc pro tunc proceedings.

{¶ 28} We remand this matter to the trial court with instructions to issue a nunc pro tunc entry correcting the judgment entry in Case No. 2024 CR 552 to reflect accurately that Edmonson pleaded guilty to kidnapping with both the age element of the underlying offense and the sexual-motivation specification eliminated, thereby removing any possibility of life imprisonment under R.C. 2905.01(C)(3).

{¶ 29} The first assignment of error is sustained.

**B. Edmonson's Guilty Plea in Case No. 2024 CR 552**

{¶ 30} The second assignment of error alleges:

> APPELLANT'S GUILTY PLEA, IN CASE NO. 2024 CR 0552, WAS NOT MADE KNOWINGLY, INTELLIGENTLY OR VOLUNTARILY THEREBY VIOLATING HIS CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 31} Edmonson presents this assignment of error contingent upon our resolution of the first assignment, arguing that if we were to determine the sexual-motivation specification remained part of his plea, his constitutional rights would have been violated. We conclude that the issues raised in this assignment of error are moot based on our resolution of the first assignment of error.

- 10 -

{¶ 32} Edmonson explicitly frames this assignment as contingent, stating it is presented "in an abundance of caution" should we determine that the sexual-motivation specification was not eliminated as part of the plea agreement. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (Cleaned up.) *State ex rel. Citizens for Community Values, Inc. v. DeWine*, 2020-Ohio-4547, ¶ 7.

{¶ 33} Our analysis of the first assignment of error establishes definitively that the sexual-motivation specification was eliminated as part of the plea agreement. The record demonstrates through multiple indicators that both the age element of the underlying kidnapping offense and the sexual-motivation specification were removed to eliminate entirely the possibility of life imprisonment under R.C. 2905.01(C)(3). Given this determination, the premise underlying Edmonson's second assignment of error simply did not occur. Edmonson was not misled about the nature of his plea. He received accurate information that the sexual-motivation specification would be dismissed, and his plea was accepted on that basis. The factual predicate for his constitutional challenge is absent from the record.

{¶ 34} Because we have determined that the record establishes beyond question that the sexual-motivation specification was eliminated as part of the plea agreement, Edmonson's constitutional challenge to his plea lacks any factual foundation. His plea was entered with complete and accurate knowledge that the specification would be dismissed, exactly as the parties understood and as the trial court implemented through its sentencing decision. The issues raised in this assignment of error are therefore moot.

{¶ 35} The second assignment of error need not be addressed.

**C. Edmonson's Guilty Plea in Case No. 2024 CR 457**

{¶ 36} The third assignment of error alleges:

APPELLANT'S GUILTY PLEA, IN CASE NO. 2024 CR 0457, AS TO COUNT V WAS NOT MADE KNOWINGLY, INTELLIGENTLY OR VOLUNTARILY THEREBY VIOLATING HIS CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 37} Edmonson challenges the validity of his guilty plea to Count V in Case No. 2024 CR 0457, contending that the trial court's failure to properly explain this charge during the plea colloquy violated his constitutional rights. This assignment of error requires us to determine whether the trial court's admittedly imperfect colloquy nonetheless satisfied the requirements of Crim.R. 11(C), and if not, whether any deficiency necessitates vacating Edmonson's plea.

### 1. The Governing Legal Framework

{¶ 38} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." (Citations omitted.) *State v. Engle*, 74 Ohio St.3d 525, 527, 1996-Ohio-179. Crim.R. 11(C) "prescribes the process that a trial court must use before accepting a plea of guilty to a felony." *State v. Bishop*, 2018-Ohio-5132, ¶ 11. The rule "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 2020-Ohio-2765, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975).

{¶ 39} The Ohio Supreme Court's decision in *Dangler* provides the framework for evaluating Crim.R. 11 compliance. Under *Dangler*, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to

- 12 -

comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16. The Court recognized two narrow exceptions to this prejudice requirement: first, when a trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c), *id.* at ¶ 14, and second, when a trial court "*complete*[*ly*] fail[s] to comply with a portion of Crim.R. 11(C)," (Emphasis in original.) *Id.* at ¶ 15.

{¶ 40} Importantly, *Dangler* clarified that the inquiry is not whether the trial court provided a perfect colloquy, but rather whether "the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Id.* at ¶ 12. The Court established a straightforward three-part test: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Dangler* at ¶ 17.

## 2. The Trial Court's Compliance with Crim.R. 11(C)(2)(a)

{¶ 41} Our review of the plea proceedings reveals that while the trial court's colloquy was far from perfect, it did not completely fail to comply with Crim.R. 11(C)(2)(a) regarding Count V. The record establishes several distinct avenues through which Edmonson received information about this charge.

{¶ 42} The trial court admittedly began the colloquy by erroneously discussing dismissed Counts I and II rather than the charges to which Edmonson was actually pleading guilty. This created initial confusion, as the court provided detailed explanations of offenses involving victims W.E.1 and S.E., neither of whom were connected to Count V. But the court recognized its error partway through the proceedings and attempted to correct course. More significantly, the court specifically addressed Count V when

explaining maximum penalties, stating: "The maximum minimum sentence I could impose on Count V would be eight years in prison." This direct reference to Count V by name, coupled with the penalty explanation, provided Edmonson with concrete information about this particular charge.

{¶ 43} When formally accepting Edmonson's guilty pleas, the trial court specifically enumerated each count, asking: "as to Count III, endangering children; Count IV, endangering children; Count V, endangering children, and Count XXI, felonious assault, how do you plead to each of those four charges?" This judicial inquiry explicitly identified Count V as endangering children and required Edmonson's individual response, ensuring his awareness that he was pleading to this specific charge.

{¶ 44} The prosecutor's factual recitation provided crucial clarifying information, correctly identifying all charges including Count V and specifying that this count involved victim W.E.3. For Count V specifically, the State alleged "torture or cruel abuse of W.E.3, a child under eighteen years of age, occurring between February 8, 2019, and December 13, 2023, resulting in serious physical harm." When asked whether he disagreed with or misunderstood this factual basis, Edmonson responded negatively. The written plea forms, which constitute an integral component of the Crim.R. 11 process, clearly delineated Counts III, IV, V, and XXI as the charges to which Edmonson was pleading guilty. Edmonson acknowledged reviewing these forms with his counsel, understanding their contents, and signing them voluntarily.

{¶ 45} Edmonson's argument that the trial court "completely failed" to comply with Crim.R. 11(C)(2)(a) regarding Count V misconstrues the *Dangler* standard. A complete failure occurs when a court makes "'no mention'" of the relevant requirement. *State v. Obhof*, 2023-Ohio-408, ¶ 26 (11th Dist.), quoting *Dangler*, 2020-Ohio-2765, at ¶ 15. *See*

*also State v. Fabian*, 2020-Ohio-3926, ¶ 19-20 (12th Dist.). Here, the trial court did not remain entirely silent about Count V. Rather, the court specifically mentioned Count V when explaining penalties, explicitly included it when accepting pleas, and ensured that the factual basis addressed this charge.

**{¶ 46}** This case is materially different from *State v. Sarkozy*, 2008-Ohio-509, on which Edmonson relies. In *Sarkozy*, the trial court made absolutely no mention of postrelease control despite its mandatory imposition, creating a complete void in the defendant's understanding of his sentence. *Sarkozy* at ¶ 22. Here, by contrast, the court provided multiple touchpoints of information about Count V, even if the initial explanation was confusing.

**{¶ 47}** Rather, our analysis aligns with the approach taken in *State v. Mills*, 2024-Ohio-3359 (12th Dist.), where we found adequate Crim.R. 11 compliance despite a less-than-ideal colloquy. In *Mills*, as here, the defendant received essential information about his charge and penalty through various components of the plea process, even though the trial court's explanation lacked perfect clarity. The *Mills* court emphasized that Crim.R. 11 does not require mechanical perfection but rather focuses on whether the defendant actually understood the charges and penalties. *See Mills* at ¶ 16. We have said (several times) that """it is sufficient if the totality of the circumstances warrant the trial court in making a determination [that] the defendant understands the charge[].""" *Id*., quoting *State v. Huston*, 2018-Ohio-2818, ¶ 19 (12th Dist.), quoting *State v. Goens*, 2006-Ohio-4324, ¶ 10 (12th Dist.).

**{¶ 48}** The present case presents even stronger evidence of compliance than *Mills*. Here, unlike in *Mills*, the court specifically mentioned the challenged count by name when discussing penalties and explicitly included it when accepting the defendant's pleas.

The prosecutor's detailed factual basis and the defendant's review of comprehensive plea forms provided additional layers of information.

{¶ 49} We do not think that the temporary confusion created by the court's initial discussion of dismissed counts and its failure to properly explain the basis of Count V during the plea colloquy constituted a complete failure to comply with a portion of Crim.R. 11(C). As the Court emphasized in *Dangler*, the focus must be on "whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea," not whether the colloquy followed a perfect sequence. *Dangler*, 2020-Ohio-2765, at ¶ 12.

### 3. Edmonson has not demonstrated prejudice

{¶ 50} Because this case does not involve a failure to explain constitutional rights and does not involve complete noncompliance with Crim.R. 11(C)(2)(a), Edmonson must demonstrate prejudice to succeed on his challenge. The test for prejudice is "'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶ 51} Multiple aspects of the record undermine any claim of prejudice. First, Edmonson was represented by counsel throughout the proceedings and acknowledged reviewing the charges and plea forms with his attorney. Second, when the prosecutor provided the factual basis specifically identifying Count V and victim W.E.3, Edmonson indicated no confusion or disagreement. Third, Edmonson's responses throughout the colloquy reflected his understanding of the proceedings. Most significantly, there is no indication in the record that Edmonson would have refused to plead guilty to Count V had the court provided a more detailed initial explanation. The charge carried the same penalty as the other endangering-children counts, involved the same basic conduct

(torture or cruel abuse of a child), and was part of a comprehensive plea agreement that eliminated the possibility of a life sentence on the kidnapping charge.

{¶ 52} Edmonson's representation by competent counsel provides an additional safeguard against uninformed pleas. The record establishes that his attorney reviewed the charges and plea forms with him before the hearing. In the absence of any indication that counsel was ineffective or that Edmonson was confused about the charges despite his attorney's guidance, we cannot presume prejudice from the court's imperfect colloquy.

{¶ 53} While we do not condone the trial court's initial confusion regarding which counts were being discussed, the totality of the plea proceedings demonstrates that Edmonson received adequate information about Count V to make his plea knowingly, intelligently, and voluntarily. The court's specific mention of Count V during penalty discussions, explicit inclusion of this count when accepting pleas, and the prosecutor's detailed factual basis provided sufficient information to satisfy Crim.R. 11(C)(2)(a).

{¶ 54} Because the trial court did not completely fail to comply with Crim.R. 11(C)(2)(a), Edmonson was required to demonstrate prejudice, which he has failed to do. The record supports the conclusion that Edmonson understood he was pleading guilty to Count V involving victim W.E.3, and nothing suggests he would have acted differently with a more detailed initial explanation.

{¶ 55} The third assignment of error is overruled.

### D. The Felonious-Assault Conviction

{¶ 56} The fourth assignment of error alleges:

THE TRIAL COURT ERRED, IN CASE NO. 2024 CR 0457,
IN NOTING THAT FELONIOUS ASSAULT IS A FELONY OF
THE FIRST DEGREE.

{¶ 57} Lastly, Edmonson challenges the trial court's characterization of his

felonious assault conviction in the judgment of conviction for Case No. 2024 CR 0457, arguing that the court incorrectly described the offense as a first-degree felony when it is statutorily classified as a second-degree felony. The State acknowledges that this constitutes a clerical error requiring correction through a nunc pro tunc entry. Our analysis confirms that the error meets the established criteria for such relief and warrants remand for correction.

{¶ 58} The record establishes without dispute that Edmonson pleaded guilty to felonious assault in violation of R.C. 2903.11(A)(1). This statute unambiguously classifies his felonious-assault charge as a second-degree felony. *See* R.C. 2903.11(D)(1)(a). Nevertheless, the trial court's judgment of conviction for the case contains a reference characterizing the offense as "a felony of the first degree" on page one. Tellingly, on page two of the judgment entry the court correctly described the same offense as a second-degree felony, demonstrating that the erroneous reference represents an isolated mistake rather than a substantive legal misunderstanding.

{¶ 59} Ohio law provides clear guidance for addressing such errors through Crim.R. 36, which authorizes courts to correct "clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission." A clerical error constitutes "a mistake[] or omission that is mechanical in nature and apparent on the record and does not involve a legal decision or judgment." *Lester*, 2011-Ohio-5204, at ¶ 18.

{¶ 60} The mischaracterization of felonious assault clearly satisfies the established criteria for clerical correction. The error is mechanical in nature, involving nothing more than an incorrect degree designation that contradicts both statutory law and the court's demonstrated understanding throughout the proceedings. The mistake is readily

apparent from the record, and the error involves no legal decision or judgment. The isolated reference to a first-degree felony represents nothing more than a transcription error that fails to reflect the court's actual decision.

{¶ 61} We remand this matter to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry that correctly characterizes Count XXI, felonious assault, as a second-degree felony in accordance with R.C. 2903.11(D)(1)(a).

{¶ 62} The fourth assignment of error is sustained.

### III. CONCLUSION

{¶ 63} We have overruled the second and third assignments of error and sustained the first and fourth assignments of error. The trial court's judgments of conviction are affirmed in part and reversed in part. We affirm Edmonson's convictions on all counts, finding that his guilty pleas were entered knowingly, intelligently, and voluntarily in compliance with constitutional and procedural requirements. But we reverse those portions of the judgments that contain the clerical errors identified in our analysis.

{¶ 64} These cases are remanded for the limited purpose of issuing nunc pro tunc judgment entries of conviction that accurately reflect the court's determinations during the plea proceedings. The corrected entry in Case No. 2024 CR 552 should reflect that Edmonson pleaded guilty to kidnapping with both the age element of the underlying offense and the sexual-motivation specification eliminated. And the corrected entry in Case No. 2024 CR 457 should properly characterize Count XXI, felonious assault, as a felony of the second degree.

BYRNE, P.J., and PIPER, J., concur.

## **J U D G M E N T   E N T R Y**

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgments or final orders appealed from be, and the same hereby are, reversed and vacated as to the specification attached to Count 1 in Case No. 2024 CR 552 and as to felony degree of Count XXI in Case No. 2024 CR 457 and remanded to correct the clerical errors in the judgment entries of conviction by the issuance of nunc pro tunc entries consistent with the above Opinion. In all other respects, the judgments of the trial court are affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 75% to appellant and 25% to appellee.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Mike Powell, Judge